Gregory Gorski (*admitted pro hac vice*)
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA  19110
Telephone:   (215) 735-8600
Facsimile:    (215) 940-8000
ggorski@consumerlawfirm.com

Stephanie R. Tatar – State Bar No. 237792
**TATAR LAW FIRM, APC**
3500 West Olive Avenue
Suite 300
Burbank, California 91505
Telephone: (323) 744-1146
Facsimile: (888) 778-5695
Stephanie@thetatarlawfirm.com

*Attorneys for Plaintiff Danny Baker*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| **DANNY BAKER,**<br><br>**Plaintiff,**<br><br>v.<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC., et al.**<br>**Defendants.** | **Civil Action No. SACV 14-1011 AG (ANx)**<br><br>**PLAINTIFF DANNY BAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   June 1, 2015<br>Time:   10:00 a.m.<br>Place:   Courtroom 10D<br>Judge:  Hon. Andrew J. Guilford |

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................. 1

LEGAL STANDARD ......................................................................... 2

ARGUMENT .................................................................................... 2

**I.      WHETHER CREDCO VIOLATED FCRA SECTION 1681e(b)
          IS A JURY QUESTION** ........................................................ 2

**II.     CREDCO IS NOT ENTITLED TO JUDGMENT
          AS A MATTER OF LAW** ...................................................... 4

   A. The Unambiguous Text Of The FCRA Does Not Limit
      The Duties Of Reseller Under Section 1681e(b) ......................... 6

   B. Promoting Accuracy Is The Hallmark Of The FCRA ............................ 10

   C. Notice Of An Inaccuracy Is Not A Requirement To Establish A Claim
      Under Section 1681e(b) ....................................................... 13

**III.    PLAINTIFF'S DAMAGES ARE A JURY QUESTION** ..................... 16

   A. Plaintiff's Auto Loan Denial .............................................. 16

   B. Plaintiff's Claim For Harm To Reputation And Emotional Distress ....... 18

**IV.     MATERIAL QUESTIONS OF FACTS EXIST AS TO WHETHER
          CREDCO WILLFULLY VIOLATED FCRA SECTION 1681e(b)** .20

   A. Plaintiff Is Required to Show Only that Credco Acted Recklessly In
      Violation of FCRA Section 1681n .........................................20

PLAINTIFF DANNY BAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1

B.  Plaintiff Has Come Forward with Sufficient Evidence For a Reasonable
Jury To Conclude That Credco's Procedures For Preparing Credit
Reports Were Reckless ........................................................................20

C.  The "Reasonable Reading" Standard Set Forth in *Safeco* Is Inapplicable
To This Matter ........................................................................................23

CONCLUSION .............................................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# TABLE OF AUTHORITIES

## Cases

*Aero Med, Inc. v. White Mountain Communities Hosp., Inc.*
    2012 WL 4086531 (D. Ariz. Sept. 17, 2012)................................18

*Anderson v. Trans Union, LLC*
    345 F. Supp 2d 963 (W.D. Wis. 2004)........................................15

*Boggio v. USAA Fed. Sav. Bank*
    696 F.3d at 620...............................................................21

*Cahlin v. General Motors Acceptance Corp.*
    936 F.2d 1151 (11th Cir.1991).............................................4, 24

*Celotex Corp. v. Catrett*
    477 U.S. 317 (1986) ..........................................................2

*Cortez v. TransUnion, LLC*
    617 F.3d 688 (3d Cir. 2010).............................................14, 24

*Credit Bureau Servs., Inc. v. Experian Info. Solutions, Inc.*,
    2012 WL 6102068 (S.D. Fla. Dec. 7, 2012)  .................................8

*Dennis v. BEH–1, LLC*
    520 F.3d 1066 (9th Cir.2008)   .......................................17, 18, 19

*DiRosa v. Equifax Information Services, LLC.*
    2014 WL 3809202 (C.D. Cal. Jan. 14, 2014) ..............5, 10, 13, 20

*Dively v. Trans Union, LLC*
    2012 WL 246095 (E.D. Pa. Jan. 26, 2012) ................12, 13, 14, 16

*Farmer v. Phillips Agency, Inc.*
    285 F.R.D. 688 (N.D.Ga.2012)..............................................24

*Fischl v. General Motors Acceptance Corp*
    708 F.2d 143 (5th Cir. 1983)...............................................9

*Galen v. County of Los Angeles*
    477 F.3d 652 (9th Cir. 2007)...............................................2

*Gorman v. Wolpoff & Abramson, LLP*
    584 F.3d 1147 (9th Cir. 2009) ............................................................. 17, 18

*Grigoryan v. Experian Info. Solutions, Inc.*
    2014 WL 7745883 (C.D. Cal. Dec. 18, 2014) ........................................... 19

*Guimond v. Trans Union Credit Info. Co.*
    45 F.3d 1329 (9th Cir. 1995)........................................................... passim

*Henson v. CSC Credit Srvcs.*
    29 F. 3d 280 (7th Cir.).................................................................... 14

*In re Catapult Entm't, Inc.,*
    165 F.3d 747 (9th Cir. 1999).......................................................... 11

*Lewis v. Ohio Professional Electronic Network LLC*
    190 F. Supp. 2d 1049 (S.D. Ohio 2002)........................................... 9

*Neclerio v. Trans Union, LLC*
    2013 WL 6052067 (D. Conn. Nov. 15, 2013) ................................. 24

*O'Brien v. Equifax Information Services, LLC*
    382 F.Supp.2d 733 (E.D.Pa. 2005) ................................................. 16

*O'Connor v. Trans Union Corp.*
    1999 WL 773504 (E.D.Pa. Sept.29, 1999) ..................................... 16

*Perez v. Trans Union, LLC*
    526 F. Supp. 2d 504 (E.D. Pa 2007) .............................................. 5

*Philbin v. Trans Union Corp.*
    101 F.3d 957 (3d Cir.1996)............................................................ 12

*Poore v. Sterling Testing Sys. Inc.*
    410 F. Supp. 2d 557 (E.D. Ky. 2006) ............................................ 7

*Price v. Trans Union, LLC*
    737 F. Supp. 2d 281 (E.D. Pa. 2010) ............................................ 24

*Ray v. Equifax Info. Srvcs., LLC*
    327 Fed. Appx. 819 (11th Cir. 2009)............................................. 24

*Safeco Insurance Co. of America v. Burr*

    551 U.S. 47 (2007) ..............................................................20, 23, 24

*Sarver v. Experian Information Solutions, Inc.*

    390 F.3d 969 (7th Cir. 2004).............................................. 14, 15

*Schmitt v. Chase Manhattan Bank, N.A.,*

    2005 WL 2030483 (D. Minn. Aug 23 2005) .................................15

*Seamans v. Temple Univ.*

    744 F.3d 853 (3d Cir. 2014) ......................................................21

*Serfess v Equifax Credit Information Srvcs*

    2014 WL 4272032 (D.N.J. 2014).................................................15

*Smith v. E-Backgroundcheck.com*

    No. 13-2658, (N.D. Ga Jan 20, 2015) ....................................22, 24

*Smith v. HireRight Solutions, Inc.*

    711 F. Supp. 2d 426 (E.D. Pa. 2010) ..........................................24

*Starkey v. Experian Information Solutions, Inc*

    32 F. Supp. 3d 1105 (C.D. Cal. 2014).....................5, 10, 13, 15, 20

*Taylor v. Corelogic Saferent, LLC*

    No. 13-3435 (N.D. Ga. Oct 23, 2014)..........................................22

*Valentine v. First Advantage Saferent, Inc.*

    2008 WL 4367353 (C.D. Cal. Sept. 23, 2008)..............................12

*Waterman v. Experian Info. Solutions, Inc.*

    2013 WL 675764 (C.D. Cal. Feb. 25, 2013)...................................7

*Zeltser v. City of Oakland*

    63 F. App'x 296 (9th Cir. 2003) ..................................................18

PLAINTIFF DANNY BAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Statutes and Regulations**

12 C.F.R 1022.44(a) ...............................................................................13

16 C.F.R. Part 600 App. (2000) ...........................................................16

16 C.F.R. pt. 600 app. § 603(d)(5)(C) ...................................................9

Fair Credit Reporting Act

     15 U.S.C. §§ 1681(a)(1) ...............................................................10

     15 U.S.C. §§ 1681a(u) ...................................................................6

     15 U.S.C. §§ 1681a(f) ....................................................................7

     15 U.S.C. §§ 1681i ....................................................................7, 9

     15 U.S.C. §§ 1681e(b)...........................................................passim

     15 U.S.C. §§ 1681s .......................................................................13

     15 U.S.C. §§ 1681s-2(e) ...............................................................13

     15 U.S.C. §§ 1681m .....................................................................23

     15 U.S.C. §§ 1681n ......................................................................20

     15 U.S.C. §§ 1681n(a)..................................................................20

**Rules**

Fed. R. Civ. P. 56(c)(2) ...........................................................................2

**Other**

FTC Staff Opinion letter, William Haynes (June 9, 1998) ...................8, 9

FTC Staff Opinion, Clarke W. Brinkerhoff (September 9, 1998)............9

PLAINTIFF DANNY BAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# **PRELIMINARY STATEMENT**

Credco is a reseller of credit information, under the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq.* ("FCRA"), preparing reports based on credit data it receives from the national credit bureaus: Experian, Equifax and TransUnion.  Credco admits it employs no procedures at all to assure that the credit information it sells on its reports is accurate, and, in this case, in fact sold credit reports containing erroneous and derogatory credit information about Plaintiff. Credco acknowledges that it is aware of the problems that the national credit bureaus have with improperly mixing the credit information of one or more consumers in a single file, as was the case here. Credco even has computer technology to instantaneously identify when mismatching information it included in the credit information it resells. Rather than employing procedures to hold the sale of the report or reconcile the inconsistent data, Credco sells its reports no matter what inaccuracies they have, and has even developed a regime where it profits from the inaccuracies on its report by charging lenders extra to get the inaccuracies corrected.

Credco now claims that it is entitled to summary judgment.  Credco bases its claim on: (1) an erroneous interpretation of the statutory text of Section 1681e(b) of the FCRA; (2) flawed public policy arguments that contradict the very purpose of the FCRA to promote accuracy in credit reporting; (3) inapposite caselaw that would not apply to the facts of this case, and (4) a misguided belief that Plaintiff did not experience any harm.  Accordingly, the motion should be denied in its entirety.

1

**LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 56(c)(2), a motion for summary judgment will only be granted if:  "The pleadings, the discovery and disclosure material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2) (revised as of Dec. 1, 2009).  A court may not, at the summary judgment stage, weigh evidence or make credibility decisions.  These tasks are left to the fact-finder.  *See generally Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 321–23 (1986)).

**ARGUMENT**

**I.   WHETHER CREDCO VIOLATED FCRA SECTION 1681e(b) IS A JURY QUESTION.**

Plaintiff claims that Credco violated FCRA Section 1681e(b) which requires consumer reporting agencies ("CRAs") such as Credco, to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the [agency's] report relates." 15 U.S.C. § 1681e(b).  In the Ninth Circuit a consumer "has made out a prima facie case under § 1681e(b) by showing that there were inaccuracies in [his] credit report." *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1334 (9th Cir. 1995)

Plaintiff has come forward with substantial evidence that shows Credco sold a credit report that included derogatory and inaccurate student loan accounts that did

PLAINTIFF DANNY BAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

not relate to Plaintiff, but instead related to Plaintiff's deceased father.  *See* Pl. Statement of Genuine Disputes, at ¶¶ 1–14.   The evidence further shows that the discrepancies are evident from even a cursory review of the report due to the obvious variation between the Experian data reported which included all eight delinquent student loans and the TransUnion and Equifax data which did not report any of the student loans at issue. *See id*, at ¶¶ 7-9.  Moreover, the discrepancy in the data received and reported by Credco was equally visible from the disparity of over $20,000 in outstanding debt between the Experian data versus the TransUnion and Equifax data.  *See id*.

Plaintiff further has come forward with evidence which establishes that Credco has no procedures in place at all to assure that the information it resells is accurate despite marketing to its customers that it provides "the most accurate information available."  *See id*. at ¶¶ 17-26. Credco further has admitted it is aware that the credit data it receives from the national credit bureaus is susceptible to being "mixed," as was the case here.  See *id*. at ¶ 23.  Credco even has the computer technology capable of instantly identifying when these inaccuracies are present within the data it received from the national credit bureaus but does not use it to reconcile inaccuracies or hold the sale of the report to follow up with the national credit bureaus. *See id*. at ¶ 24-25.  Even more remarkable, Credco has instituted a

process whereby it stands to profit from the sale of inaccurate credit information by charging lenders to correct the inaccuracies after the report is sold.  See *id.* at ¶ 26.

Plaintiff's evidence on the whole establishes that: inaccuracies existed in the credit reports sold by Credco about Plaintiff; the inaccuracies were easily identifiable; Credco was aware of the existence of "mixed file" inaccuracies that occur with the credit files obtained from national credit bureaus; and Credco has the technology to instantaneously identify these inaccuracies.  Despite these circumstances, Credco has no procedures to assure the accuracy of the reports it sells and even has a process in place where it tries to profit from these inaccuracies. Plaintiff has unquestionably come forward with sufficient evidence to allow him to present his case to a jury.  *See Guimond*, 45 F.3d at 1333. ("The reasonableness of the procedures and whether the agency followed them will be jury questions in the overwhelming majority of cases.") (citing *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991)).

## II. CREDCO IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.

Credco here attempts to summit the high peaks of showing that it is somehow entitled to judgment as a matter of law.  Credco is no stranger to this road since it has made the same arguments in three different lawsuits and failed each time.   In *Perez v. Trans Union*, *LLC*, the Eastern District of Pennsylvania Court specifically rejected Credco's argument that its procedures were reasonable as a matter of law

4

just as Credco argues here.  526 F. Supp. 2d 504, 509 (E.D. Pa 2007).  In rejecting Credco's contentions, the *Perez* Court explained "the question left for the trier of fact is whether Credco reasonably ought to have appreciated . . . that there was a *material* inaccuracy such that a duty arose upon it to do something to correct it or not make a report."  *Id.* at 509.  Additionally, in *Starkey v. Experian Information Solutions, Inc.*, the Central District of California Court likewise rejected a similar argument by Credco holding "The FCRA, therefore, requires that this Court apply the same the definition of "inaccurate" to a report prepared by reseller that it would apply to a report prepared by any other credit reporting agency."  32 F. Supp. 3d 1105, 1109 (C.D. Cal. 2014).  The same court reached the same conclusion in *DiRosa v. Equifax Information Services, LLC,* 2014 WL 3809202 (C.D. Cal. Jan. 14, 2014), denying yet another one of Credco's motions with similar arguments.

Credco notably does not make any attempt to distinguish the cases above. Indeed, Credco inexplicably does not even acknowledge their existence. Nonetheless, Credco now vies for its fourth bite at the same apple.  Credco's arguments here are not substantially different from the previous cases cited above where its motions were denied. In this instance, it comingles three different arguments on the same subject: (1) erroneous statutory interpretation; (2) flawed policy arguments; and (3) inapposite legal precedent. All of these arguments fail.

### A. The Unambiguous Text Of The FCRA Does Not Limit The Duties Of Resellers Under Section 1681e(b).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Credco admits it is a "reseller" as that term is defined under the FCRA. A reseller by definition is a consumer reporting agency. *See* 15 U.S.C. §1681a(u) ("The term "reseller" means a consumer reporting agency"). Further, FCRA Section 1681e(b) explicitly applies "whenever a consumer reporting agency prepares a consumer report." Accordingly, the explicit and unambiguous text of the FCRA obligates resellers like Credco to comply with Section 1681e(b). Moreover, there is no provision anywhere in the statute that gives resellers a safeharbor from complying with Section 1681e(b) or sets forth different obligations for resellers in the preparation of consumer reports under Section 1681e(b).

The interpretation set forth above was already made known to Credco when its motion in *Starkey* was denied. There, the Court explained "'While it is true that the FCRA sets forth different requirements for resellers of information (for example, § 1681i), nowhere does the FCRA set forth a different standard in § 1681e(b).'" 32 F. Supp. 3d at 1109 (quoting *Waterman v. Experian Info. Solutions,* 2013 WL 675764, *2 (C.D. Cal. Feb. 25, 2013)). *See also Poore v. Sterling Testing Sys. Inc.* 410 F. Supp. 2d 557, 566 (E.D. Ky. 2006) ("Where Congress has chosen to limit a reseller's obligations under the Act, it has explicitly done so.").

Credco first tries to make a distinction by claiming that the term "merge" in the definition of "reseller" as compared to the term "evaluating" in the definition of a consumer reporting agency somehow justifies upending the statute and exonerating

Credco from having to comply with Section 1681e(b).   This argument, however, is just a disguise for the same argument that already failed in other cases as cited above where Credco's motions were denied.

An analysis of the definition of "consumer reporting agency" negates Credco's argument entirely because the word "evaluating" is not a necessary component to satisfy the definition of a consumer reporting agency. A consumer reporting agency could be a person who "engages…. in assembling **OR** evaluating." 15 U.S.C. §1681a(f) (emphasis added). Therefore, "evaluating" is not a necessary component to satisfy the definition of a consumer reporting agency.   Furthermore, Credco admits it assembles reports.

Conversely, there is nothing operative about the term "merge" in the definition of reseller.   Credco's own representative confirmed this. *See* Pl. Statement of Genuine Disputes, at ¶ 19.   Credco notably did not even merge the information it received from the credit bureaus in this instance, nullifying its entire argument. *See id at* ¶ 6.

Credco further is trying to make a distinction by claiming the national credit bureaus are uniquely "evaluators," but it has no legal support or factual support for this statement. In reality, the national credit bureaus are more akin to assemblers just like Credco. One court has described the national credit bureaus as "repositories" that "supply consumer credit information to end users, such as banks, and to

PLAINTIFF DANNY BAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

companies that resell the information to end users." which is a far cry from evaluating anything. *See Credit Bureau Servs., Inc. v. Experian Info. Solutions, Inc.*, 2012 WL 6102068, at *1 (S.D. Fla. Dec. 7, 2012).

In trying to make this distinction, Credco is also ignoring the historically broad interpretation of "consumer reporting agency" by erroneously attempting to employ a narrow one.  The FTC has even opined that "[o]ur review of the entire FCRA does not indicate any special meaning for ["assemble" or "evaluate"], and the legislative history of the law does not show that Congress intended any special meaning to apply. Indeed, it is clear from a review of the legislative history that Congress intended for the FCRA to cover a very broad range of "assembling" or "evaluating" activities."  FTC Advisory Opinion, William Haynes, (June 9, 1998).[1] *See also* 16 C.F.R. pt. 600 app. § 603(d)(5)(C) (broad definition of consumer report).

On a more practical level, federal courts and the FTC have found many different types of business models within the credit reporting industry to be CRAs, not just the well-recognized agencies.  *See Lewis v. Ohio Professional Electronic Network LLC*, 190 F. Supp. 2d 1049, 1058 (S.D. Ohio 2002) (finding company that regularly sells public arrest records is CRA); *See also* FTC Staff Opinion, Clarke W. Brinkerhoff (September 9, 1998) (company that provides information to fast food

---

[1]    Federal Trade Commission staff opinion letters regarding the FCRA are advisory in nature.  16 C.F.R. § 1.72.  Courts rely on such letters as persuasive authority in construing the FCRA.  See *Fischl v. General Motors Acceptance Corp*., 708 F.2d 143, 149 n.4 (5th Cir. 1983).

employers over telephone regarding prospective employees is CRA); FTC Staff Opinion, William Haynes (June 9, 1998) (company that gathers criminal records for third parties is CRA).   Although certain niche CRAs may principally evaluate information collected by other sources, most are simply assembling reports based on data that they gather themselves. *See id.* ("From your description of its activities, it appears that, at the very least, your company "assembles" information as this term is commonly understood (dictionary definitions include "to gather" or "to collect")."

Credco also separately points to FCRA Section 1681i as reason to hold resellers to a different standard under Section 1681e(b).  The Central District of California Court in *Starkey* (involving Credco), *DiRosa* (involving Credco) and *Waterman* (involving another reseller Dataquick) considered the exact same argument and rejected it as discussed above. Credco again does not make any attempt to distinguish these cases and offers no cases at all to support its argument because there are none.

**B. Promoting Accuracy Is The Hallmark of the FCRA .**

Accuracy is the heart of the FCRA.  The Congressional findings in the preamble to the statutory text explain that the FCRA's purpose is founded upon the fact that "[t]he banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system." *See* 15 U.S.C § 1681(a)(1). The Ninth Circuit has also recognized the importance of

9

accuracy to the FCRA's purpose. *See Guimond.*, 45 F.3d at 1333)(finding FCRA was crafted to protect consumers from the transmission of inaccurate information about them).

Despite the importance of accuracy to the purpose of the FCRA, and unambiguous statutory text obliging resellers such as Credco to employ procedures to assure maximum possible accuracy, Credco arrogantly argues in the opposite direction.  Credco claims that because it resells data, it should be permitted to ignore the FCRA altogether and sell patently inaccurate credit reports, which it purports that customers somehow desire.

As a general matter, policy arguments cannot be the foundation to ignore compliance with a statute.  *See* I*n re Catapult Entm't, Inc.*, 165 F.3d 747, 754 (9th Cir. 1999) ("Policy arguments cannot displace the plain language of the statute").  Moreover, Credco here is not arguing in favor of the underlying policies and purposes for the enactment of the FCRA.  Credco is specifically arguing to turn the statute on its head and permit resellers to sell patently inaccurate credit reports with impunity.

Credco's sole foundation for this argument is the self-serving declaration of its own employee.  As discussed in Plaintiff's Response to Credco's Statement of Undisputed Facts, the declaration of Mercedes Vela is replete with inadmissable opinions, generalizations made without any evidentiary foundation, speculation and

PLAINTIFF DANNY BAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

hearsay.   Accordingly, the Declaration of Ms. Vela on this subject should be excluded from consideration entirely.

Credco then disingenuously claims that it is simply unequipped and incapable of identifying and reconciling inaccurate information it receives from the national credit bureaus.  This argument is belied by the fact that Credco's computer system is already capable of identifying inaccuracies within the credit information it receives from the national bureaus within seconds. *See* Pl. Statement of General Disputes, at ¶¶ 24-25.  Moreover, Credco has a regime in place where it not only will remove inaccuracies on its credit reports promptly after they profit from the initial sale of the report, it then charges a fee to lenders for doing so in order to profit yet again from the inaccurate information it sold. *See id.* at ¶ 26.

Credco also makes this argument when courts have repeatedly cited inconsistencies between reports is a paradigm example of an inaccuracy that reasonable procedures should be able to identify and prevent.  *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 966 (3d Cir. 1996) (finding liability when CRA issued two reports that were inconsistent); *Starkey,* 32 F. Supp. 3d at 1107 (pointing to inconsistencies between Experian data versus TransUnion and Equifax data.) *Valentine v. First Advantage Saferent, Inc.*, 2008 WL 4367353, at *2 (C.D. Cal. Sept. 23, 2008) ("These two reports purport to reveal inconsistent information, thus at the very least putting the publisher on notice of the likely inaccuracy of the

1  subsequent report."); *Dively v. Trans Union, LLC*, 2012 WL 246095, at *4 (E.D. Pa.

2  Jan. 26, 2012) (referring to inconsistencies between TransUnion data versus

3  Experian and Equifax data). Indeed, Credco is not at a disadvantage at all.  Credco

4  is actually in a better position than the national bureaus are to identify inaccuracies

5  because it is able to view the reported information from all three national bureaus to

6  make a comparison whereas the national bureau are limited to viewing only their

7  own data.[2]

8

9

10  **C. Notice Of An Inaccuracy is Not A Requirement To Establish A**
**Claim Under Section 1681e(b).**

11

12  Credco's third argument is that it supposedly cannot be held liable under

13  FCRA Section 1681e(b) absent actual notice from the consumer.  This argument is

14  contrary to the prevailing law on the subject.  Moreover, Credco's argument on this

15  subject has been twice rejected already in the Central District of California in both

16  *Starkey* and *DiRosa*. *See Starkey*, 32 F. Supp. 3d at 1110 ("Section 1681e(b),

17

18  however, contains no notice requirement."); *Dirosa*,  2014 WL 3809202, at *3.  In

19  *Dively v. TransUnion, LLC,* 2012 WL 246095, *3 (E.D. Pa. Jan. 26 2012), the Court

20

21

22  _____

23  [2]     Credco also falsely analogizes that another FCRA covered entity, a furnisher of credit information, is supposedly authorized to report inaccurate information without consequences. Credco's claim on this subject is an outright fallacy. Contrary to Credco's claim, furnishers are equally obliged under the FCRA to have procedures in place to ensure accurate information is reported.  See 12 C.F.R 1022.44(a) ("Each furnisher must establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a consumer reporting agency."); 15 U.S.C. §§ 1681s-2(e) (authorizing the CFPB to institute regulations regarding the accuracy of credit information); 15 U.S.C §§ 1681s (granting the FTC enforcement powers to bring actions against non-compliant entities)

24

25

26

27

also considered the exact same argument promoted by another credit reseller (DataQuick) and rejected it explaining "when Congress exempted them from reinvestigation duties, it notably did not exempt them from § 1681e(b) requirements or impose different requirements on them under that section." *Id.*

Credco similarly cites no case law which distinguishes the duties of resellers from that of any other type of CRA under Section 1681e(b) because there is none. The Ninth Circuit further has never held that a plaintiff must prove that a CRA had notice of an inaccuracy and failed to act before it can be held liable under 1681e(b). The Ninth Circuit in *Guimond* also implicitly rejected this contention when it remanded a case back to the district court holding that the plaintiff was not required to prove that the consumer reporting agencies failed to correct the inaccuracies after she disputed in order to establish a claim under Section 1681e(b).  *See* 45 F. 3d at 1334.  The Third Circuit in *Cortez* has also implicitly rejected the same conclusion that Credco lobbies for here.  In *Cortez*, Trans Union argued it should not be held liable simply because it reported the plaintiff as a person appearing on the OFAC list based only on a name matched from data it obtained from the government despite the fact that the plaintiff was not that person.  *Id.* at 709.  The Third Circuit rejected this argument stating, "Allowing a credit agency to include misleading information as cavalierly as Trans Union did here negates the protections Congress was trying to

13

afford consumers and lending institutions involved in credit transactions when it enacted the FCRA." *Id.*

Credco relies on caselaw from the Seventh Circuit that does not involve claims against resellers, has never been endorsed by the Ninth Circuit, and is readily distinguishable from the facts here. The *Dively* Court aptly explained that *Henson v. CSC Credit Srvcs.*, 29 F. 3d 280 (7th Cir.), should be distinguished from the present circumstances because "that case involved reliance on a court's Judgment Docket, not on another CRA, and did not involve mistaken identity—in that case, a court had erroneously docketed a judgment against the plaintiff in a case in which he was a party." 2012 WL 246095, at *5. Similarly, *Sarver v. Experian Info. Solutions*, 390 F.3d 969 (7th Cir. 2004) is distinguishable for the same reasons because the claims involved an account that actually belonged to the plaintiff but was inaccurately designated as included in bankruptcy as opposed to a case of mistaken identity as is the case here. *Id.* at 970.[3] The *Starkey* Court also specifically distinguished and rejected Credco's reliance on the cases the Credco cites again here for support. *See Starkey*, 32 F. Supp. 3d at 1110-11 ("Defendant notes several cases

---

[3]      In *Serfess v. Equifax Credit Information Srvcs*, 2014 WL 4272032 (D.N.J. 2014), which was litigated by a *pro se* plaintiff, the same distinction is applicable because the plaintiff in that case was not claiming that the singular account at issue did not belong to him, but instead that it should have been reporting as "short sale" as opposed to a "foreclosure" which is substantially different from the circumstances here where Plaintiff was mixed with another consumer. *Id.* at *1. In *Anderson v Trans Union*, 345 F. Supp 2d 963 (W.D. Wis. 2004) and *Schmitt v. Chase Manhattan Bank, N.A.*, 2005 WL 2030483 (D. Minn. Aug 23 2005), the claims again involved a single account that actually belonged to the Plaintiff in each case. *Id* at 967.

14

which considered the absence of notice in dismissing a claim under § 1681e(b). None of those decisions, however, held that notice was a *prima facie* requirement under § 1681e(b).)

Credco's theory that the national credit bureaus are somehow inherently reliable should also be rejected. Credco notably has come not forward with any admissible evidence to describe how it is that national bureaus should be deemed inherently reliable such that Credco need not employ any procedures at all to ensure the accuracy of the information it reports.   On the contrary, Credco's own representative acknowledged that it is aware that credit bureaus commonly mix the files of consumers. *See* Pl. Statement of General Disputes, at ¶¶ 23.  The FTC even cites mixing of consumer information as the paradigm example of a systemic problem that should be identified and reconciled by reasonable procedures under Section 1681e(b):

> Examples of errors that would require such review are the issuance of a consumer report . . . containing information on two or more consumers (e.g., information that was mixed in the file) in response to a request for a report on only one of those consumers.

16 C.F.R. Part 600 App. (2000).  The *Dively* court also rejected this same argument made by another reseller that the national credit bureaus should be deemed as inherently reputable sources and rejected the premise. 2012 WL 246095, *at* \*5. Other courts have also explicitly rejected this argument of deeming repositories as inherently reliable. *See O'Brien v. Equifax Info. Servs.*, 382 F. Supp. 2d 733, 739

(E.D. Pa. 2005), (refusing to adopt holding in *Sarver*); *O'Connor v. Trans Union Corp.*, 1999 WL 773504, at *4 (E.D. Pa. Sept. 29, 1999).

## III.   PLAINTIFF'S DAMAGES ARE A JURY QUESTION

### A.   Plaintiff's Auto Loan Denial.

Plaintiff has proffered evidence that he was denied an auto loan in substantial part because of inaccuracies on his Credco report.  *See* Pl. Statement of General Disputes, at ¶¶ 3 – 13.   This claim is supported by Plaintiff's own testimony which deserves substantial weight because Plaintiff is himself a car salesperson at the auto dealership where he attempted to obtain the loan.  *See id.*, at ¶ 2. This claim is also supported by a representative of Borman Auto Group who confirmed that Plaintiff's application was rejected by multiple banks, that the Credco report was a substantial factor in considering Plaintiff for a loan, that the Experian credit score, which included the erroneous and delinquent student loans, was the only score provided by Credco and the only score that Borman had to solicit the loans to the banks. *See id.*, at ¶¶ 5, 11, 13. Borman's representative also testified that the loan Plaintiff did finally accept was at an unfavorably high interest rate, which could have been more competitive if his score was not affected by the erroneous accounts reported. *See id.* The claim is also supported by documents which show that the Credco report was sold specifically in connection with Plaintiff's attempt to obtain an auto loan, an adverse action letter and a terms sheet reflecting the highly unfavorable loan that Plaintiff was ultimately forced to accept. *See id.* at ¶¶ 4-13.

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

In *Dennis v. BEH–1, LLC,* 520 F.3d 1066 (9th Cir.2008), the Ninth Circuit found sufficient evidence of causation and damages to survive summary judgment in an FCRA case based solely on the plaintiff's own testimony that he was denied credit by lenders in connection with his attempt to start a business. *Id.* at 1069–70. In *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1174 (9th Cir. 2009), the Ninth Circuit similarly found sufficient evidence of causation and damages in another FCRA case based on Plaintiff's testimony that he was refused credit or offered higher than advertised interest rates.  Plaintiff here has come forward with more than what was accepted in *Dennis* and *Gorman* since Plaintiff's claim is not only supported by his own testimony as a car salesperson himself and an employee of the dealership where he applied, but also the dealership's representative who corroborated the credit denials, documents that show adverse action was taken and documents that confirm Plaintiff did in fact accept a highly unfavorable loan in order to obtain a less desirable car.

Credco fails to address the standard employed in both *Dennis and Gorman.* Indeed, Credco offers virtually no legal support for its argument relying on wholly inapposite case law that is far afield from an FCRA claim.[4] The remainder of

---

[4]    *See Aero Med, Inc. v. White Mountain Communities Hosp., Inc.*, No. CV-11-8031-PHX-GMS, 2012 WL 4086531, at *1 (D. Ariz. Sept. 17, 2012) (breach of contract claim about an air ambulance);  *Zeltser v. City of Oakland*, 63 F. App'x 296, 297 (9th Cir. 2003) (civil rights claim involve seizure of property from pawnshop).

17

Credco's argument is nothing more that Credco's spin on facts relating to Plaintiff's damages.[5] Arguing facts, however, has no place inside a motion for summary judgment.

**B. Plaintiff's Claims For Harm to Reputation and Emotional Distress.**

Plaintiff also has come forward with a substantial claim for harm to reputation and emotional distress. Plaintiff has testified that he has experienced humiliation and embarrassment because the delinquent student loan accounts on the Credco report were made known to his manager and his inability to obtain financing became known to his co-workers. *See* Pl. Statement of Genuine Disputes, at ¶ 12. Plaintiff also testified in detail that he suffered embarrassment, anxiety and emotional distress including feeling embarrassed in front of his co-workers, being teased and called a "roach" by his co-workers, experiencing difficulties getting to work because he did not have a car temporarily, strain on his relationship with his girlfriend including arguing and fighting because he could not get a car, loss of sleep, weight loss and worry about not having a means of transportation. *See id.* at ¶14.

The Ninth Circuit in *Guimond* confirmed that in FCRA cases Plaintiff may recover for emotional distress and humiliation, and that a denial of credit is not a

---

[5]        Credco argument that portions of Plaintiff's testimony are hearsay should also be rejected because Plaintiff's damages claim does not rest solely on Plaintiff's recollection of statements made by his manager. Moreover, the statements were specifically elicited by Credco's lawyers and is the type of hearsay that would otherwise be reconcilable if the question were asked differently. Finally, the statements also are not hearsay since they are admissible as to the effect the statements had Plaintiff given that he is also claiming damages for embarrassment, humiliation and emotional distress.

18

prerequisite to recovery under the FCRA. 45 F.3d 1329, 1333 (9th Cir. 1995). In *Guimond*, the Ninth Circuit found Plaintiff's claim for emotional distress sufficient based solely on the allegations in her complaint claiming "sleepiness, nervousness, frustration and mental anguish." *Id.* at 1332. The Ninth Circuit in *Dennis* found allegations of emotional distress sufficient base on the plaintiff's testimony alone. *See* 520 F. 3d. at 1070. *See also Grigoryan v. Experian Info. Solutions, Inc.*, __ F. Supp. 3d __ , 2014 WL 7745883, at \*29 (C.D. Cal. Dec. 18, 2014) ("The Ninth Circuit . . . allow a plaintiff's testimony alone to support an award of emotional distress damages" without "medical or psychological evidence").

Plaintiff has again come forward with substantial evidence to establish a claim for harm to reputation and emotional distress testifying in detail about the harms he suffered and linking them directly to the erroneously and derogatory report sold by Credco. Credco conversely makes no attempt to distinguish the prevailing law that supports Plaintiff's claim.

## IV. MATERIAL QUESTIONS OF FACT EXISTS AS TO WHETHER CREDCO WILLFULLY VIOLATED FCRA SECTION 1681e(b).

### A. Plaintiff Is Required to Show Only that Credco Acted Recklessly In Violation of FCRA Section 1681n.

The U.S. Supreme Court in *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007), has held that Congress intended the term "willfully" under the FCRA to have its "common law usage" and concluded that "[t]he standard civil usage thus counsels

PLAINTIFF DANNY BAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

reading the phrase 'willfully fails to comply' in § 1681n(a) as reaching reckless FCRA violations." *Id.* at 57. "Willfulness" under the FCRA is ordinarily a jury question. *See Starkey,* 32 F. Supp. 3d at 1111 (denying Credco motion and finding jury question on willfulness); *DiRosa,* 2014 WL 3809202, *3 (denying Credco motion and finding jury question on willfulness).

**B. Plaintiff Has Come Forward with Sufficient Evidence For A Reasonable Jury To Conclude That Credco's Procedures For Preparing Credit Reports Were Reckless.**

Credco here prepared a consumer report about Plaintiff containing inaccurate and derogatory information fully aware that it was following no procedure at all that could have possibly avoided the error. *See* Pl. Statement of Genuine Disputes, at ¶ 21. Moreover, it did so despite having computer technology that is capable of instanteously identifying inaccuracies. *See id*. at ¶ 24-25. Credco even came up with a process to profit from the inaccuracies it reports by forcing lenders to pay for Credco to rectify the inaccuracies. *See id.* at ¶ at 26. Credco likewise failed to employ any procedures in compliance with the Section 1681e(b) despite knowing that inaccuracies on credit reports like the ones here will harm consumer credit standing and that national bureau data is commonly susceptible to being "mixed." *See id*. at ¶ 23. Credco was also best situated to recognize these discrepancies, given the fact that its two other suppliers had no student loan records for Plaintiff at all and a

PLAINTIFF DANNY BAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

disparity of over $20,000 existed relation to Plaintiff's outstanding debt between the CRAs data.

The record here shows that Credco's practices are a deliberate result of designed policies. The *Starkey* Court notably rejected Credco's claim for dismissal of a willfull violation of Section 1681e(b) under similar facts.  *See* 32 F. Supp. 3d at 1111.  Moreover, blanket policies, such as Credco's policies here of never doing anything to reconcile patently inaccurate credit information, have repeatedly been found to be the underpinning for a willful violation of the FCRA. *See Seamans v. Temple Univ.*, 744 F.3d 853, 868 (3d Cir. 2014) ("Blanket policies, too, can underpin such a finding."); *Boggio v. USAA Fed. Sav. Bank,* 696 F.3d at 620 (remanding for a jury trial as to whether a furnisher's policy "prohibit[ing] its employees from performing anything more than a cursory confirmation of [the consumer's] status before reporting back to a CRA" constituted willful violation of the FCRA).

Credco largely rehashes the same flawed arguments it makes to avoid liability in general, and which have been refuted above.[6]  Credco also argues that it should avoid liability for willfulness because it included a supposed "disclaimer" in its report citing a Magistrate Judge's recommendation in *Taylor v. Corelogic Saferent,*

---

[6]     Credco reargues that it national bureaus should be deemed inherently reliable sources and that it cannot be held liable without notice.

*LLC*, No. 13-3435 (N.D. Ga. Oct 23, 2014) for support despite the fact that the recommendation was never even adopted.

In addition to having no precedential or persuasive effect, the *Taylor* recommendation was also distinguished by the Northern District of Georgia in *Smith v. E-Backgroundcheck.com*, No. 13-2658, (N.D. Ga Jan 20, 2015) [Docket No. 60] finding that a "disclaimer does not negate liability." *See id.* at p. 8.[7] Additionally, the *Smith* Court confirmed that the *Taylor* recommendation used the wrong legal standard to evaluate a willful violation under the FCRA by erroneously concluding that willful violation involved a knowing and willful misrepresentation or concealment. For these reasons, Credco's arguments on this subject should be rejected.

## C. The "Reasonable Reading" Standard Set Forth In *Safeco* Is Inapplicable To This Matter.

Credco's reference to *Safeco's* use of the phrase "reasonable reading" is inapplicable here.    In *Safeco*, the Court construed the meaning of the word "increase" under FCRA section 1681m.  Safeco had argued that it believed that it was not required to send an "adverse action" notice to first-time customers who were

---

[7]    Credco's also astoundingly tries to argue here that portions of the notice requirement, of FCRA Section 1681g, and found in the report, are somehow part of the supposed "disclaimer." Credco own market materials also contradict argument here by claiming its reports "contain the most accurate information available on the consumer." *See.* Pl. Statement of Genuine Disputes, at ¶ 20.

22

not offered the best insurance rates due to their credit reports.  *Safeco*, 551 U.S. at 60-62.   Although the Court disagreed with Safeco's interpretation, because the statutory meaning of the term "increase" under FCRA section 1681m was unclear on its face, and also because there was no FTC guidance or appellate court decision on that issue prior to the *Safeco* case, the U.S. Supreme Court concluded that: "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  *Id.* at 69.

This portion of the *Safeco* decision is not a defense for Credco in these circumstances. This is clearly not a case where there is any "threshold inquiry" about the "reading" of any FCRA section or provision.  Unlike the meaning of the word "increase" under FCRA section 1681m at issue in *Safeco*, there is nothing "less than pellucid" about the legal standards at issue here.   In *Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426 (E.D. Pa. 2010), the Court considering the very same argument explained that "quite unlike *Safeco*, where the statute at issue was "less-than-pellucid" and there was a "dearth of guidance," the statutory text at issue here has a plain and clearly ascertainable meaning." *Id.* at 436.[8]

---

[8]       *See also Price v. Trans Union, LLC,* 737 F. Supp. 2d 281, 290 (E.D. Pa. 2010)(same); *Neclerio v. Trans Union, LLC*, 2013 WL 6052067 (D. Conn. Nov. 15, 2013) (same).  *Smith v. E-Backgroundchecks.com, Inc.*, No. __  F. Supp. 3d __ , 2014 WL 7660989, at *8 (N.D. Ga. Nov. 5, 2014) (same); *Farmer v. Phillips Agency, Inc.,* 285 F.R.D. 688, 699 (N.D.Ga.2012) (same).

23

Furthermore, multiple appeals courts have already provided guidance on FCRA section 1681e(b) relating to a CRA's obligations to follow reasonable procedures. *See, e.g., Guimond v. TransUnion Credit Info. Co,*, 45 F.3d 1995 (9th Cir. 1995); *Cahlin v. Gen. Motors Acceptance Corp,* 936 F.2d 1151 (11th Cir. 1991); *Ray v. Equifax Info. Srvcs,. LLC,* 327 Fed. Appx. 819 (11th Cir. 2009); *Cortez v. TransUnion, LLC,* 617 F.3d 688 (3d Cir. 2010).

Credco and other resellers have also been told by courts over and over again that resellers are CRAs obliged to comply with Section 1681e(b) finding nothing ambiguous about the statute.  *See* Pl. Argument at II. A., *supra*. Additionally, as discussed above, courts have repeatedly cited inconsistencies between reports as the primary example of an inaccuracy that reasonable procedures should be able to identify and prevent. *See* Pl. Argument, at II. C., *supra*.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests the Defendant CoreLogic Credco, LLC's motion for summary judgment be denied in its entirety.


Dated: March 30, 2015              Respectfully submitted,

                                   FRANCIS & MAILMAN, P.C.


                                   By:   /s/ Gregory Gorski
                                      Gregory Gorski
                                      *Attorneys for Plaintiff*

24

PLAINTIFF DANNY BAKER'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS
RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT