Gregory Gorski (*admitted pro hac vice*)
**FRANCIS & MAILMAN, P.C.**
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA  19110
Telephone:   (215) 735-8600
Facsimile:    (215) 940-8000
ggorski@consumerlawfirm.com


Stephanie R. Tatar – State Bar No. 237792
**TATAR LAW FIRM, APC**
3500 West Olive Avenue
Suite 300
Burbank, California 91505
Telephone: (323) 744-1146
Facsimile: (888) 778-5695
Stephanie@thetatarlawfirm.com

*Attorneys for Plaintiff Danny Baker*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **DANNY BAKER,**<br><br>       **Plaintiff,**<br><br>**v.**<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC., et al.**<br><br>       **Defendants.** | **Civil Action No. SACV 14-1011 AG (ANx)**<br><br>**PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES IN SUPPORT OF HIS RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    June 1, 2015<br>Time:    10:00 a.m.<br>Place:  Courtroom 10D<br>Judge:  Hon. Andrew J. Guilford |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNCONTROVERTED FACTS

| No. | Credco's Fact and Allegedly Supporting Evidence | Plaintiff's Response |
|---|---|---|
| 1 | Borman Automotive Group, Inc. ("Borman") has no knowledge of any credit application by Plaintiff in May 2014.<br><br>Rule 30(b)(6) Deposition of Borman Automotive, Inc., attached as Exhibit B to Appendix of Exhibits ("Borman Dep."), pp. 57, 63, 71-73, 97-101. | Disputed. Plaintiff applied for an auto loan with Borman between May 2014 and September 2014.<br><br>*See* Ex. E, Hamberg Dep., at 100:8-14, 104:18- 108:8; *See* Ex. C Baker Dep at 27:25 – 28:8. *See* Ex. D, Credco Report May 2014; *See* Ex. H, Adverse Action Letter. |
| 2 | Borman has no documentation of any credit application by Plaintiff in May 2014.<br><br>Borman Dep., p. 47. | Disputed. Plaintiff applied for an auto loan with Borman between May 2014 and September 2014.<br><br>*See* Ex. D Credco Report to Borman; *See* Ex. I,  Volvo Application. |
| 3 | Borman has no record showing any denial of credit to Plaintiff in May 2014.<br><br>Borman Dep., p. 74. | Disputed.  Plaintiff was denied credit between May 2014 and September 2014 and was ultimately only able to obtain financing at an unfavorably high interest rate.<br><br>*See* Ex. E, Hamberg Dep., at 100:8-14, 104:18- 108:8; *See* Ex. I, Adverse Action Letter; *See* Ex. M, Loan |

2

| | | |
|---|---|---|
| | | Terms Sheet; *See* Ex. C Baker Dep at 93:16 – 25. |
| 4 | Borman never had any conversation with Plaintiff about the alleged May 2014 application for credit.<br><br>Borman Dep., pp. 27, 57, 71-73, 97-101. | Disputed. Borman's representative Brian Hamberg discussed his application with Plaintiff.<br><br>*See* Ex. C, Baker Dep at 27:25 – 28:8, 93:16 – 94:17. |
| 5 | Borman would have granted Plaintiff credit in May 2014 based on the score reported by Experian.<br><br>Borman Dep., p. 74. | Disputed. Plaintiff's May 2014 application for credit with Borman was denied.<br><br>*See* Ex. C Baker Dep at 27:25 – 28:8; *See* Ex. H, Adverse Action Letter. |

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES

| 6 | Plaintiff was approved for credit at Borman in 2012, 2013, July 2014, and September 2014.<br><br>Borman Dep., pp. 89-91, 92-96 | Plaintiff objects in part to the statement as immaterial to Plaintiff's claim. Plaintiff is not claiming damages for transactions that occurred in 2012 or 2013. The remainder of the statement is disputed. Plaintiff was denied credit between May 2014 and September 2014 and was ultimately only able to obtain financing at an unfavorably high interest rate.<br><br>*See* Ex. E, Hamberg Dep., at 100:8-14, 104:18- 108:8; *See* Ex. H, Adverse Action Letter; *See* Ex. M, Loan Terms Sheet; *See* Ex. C Baker Dep at 93:16 – 25. |
| 7 | Plaintiff was granted credit in 2012 by Borman with an Equifax credit score that was 50 points lower than the score reported by Experian in May 2014.<br><br>Deposition of Danny Baker, attached as <u>Exhibit A</u> to Appendix of Exhibits ("Baker Dep.), pp. 117-119; <u>Exhibit C</u> to Appendix of Exhibits. | Plaintiff objects to the statement as immaterial to Plaintiff's claim. Plaintiff is not claiming damages for transactions occurring in 2012. |
| 8 | Borman requested and received from Experian a credit report in 2012, which listed the majority of the challenged student loans. | Plaintiff objects to the statement as immaterial to Plaintiff's claim. Plaintiff is not claiming damages for |

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | Exhibit D to Appendix of Exhibits. | transactions occurring in 2012. |
| 9 | The July 2014 approval at Borman was for the same type of car Plaintiff was allegedly seeking to purchase in May 2014.<br><br>Baker Dep., pp. 130-31, 158 | Disputed.  Plaintiff originally sought to purchase a Volvo but was forced to purchase a Honda Accord in whole or in part due to erroneous credit.<br><br>*See* Ex. C Baker Dep at 123:24 – 125:9, 130:8 – 131:11. *See* Ex. E Hamberg Dep at 80:6 – 25. |
| 10 | The September 2014 approval at Borman was made pursuant to a credit score generated by Experian that was the exact same as that which Experian had reported in May 2014.<br><br>Baker Dep., pp. 129-30. | Disputed as stated.  Plaintiff admits that his application for credit between May 2014 and September 2014 were based on the credit report issued by Credco in May 2014.<br><br>*See* Ex. E Hamberg Dep at 100:17 – 101:6. |
| 11 | At the time Plaintiff allegedly applied for credit in May 2014, Plaintiff's TransUnion and Equifax scores were lower than his Experian credit score.<br><br>Baker Dep., pp. 160-64. | Disputed.  In May 2014, Credco did not provide Borman with Plaintiff's Equifax and Trans Union credit scores.<br><br>*See* Ex. D Credco Report May 2014; *See* Ex. E, Hamberg Dep, at 107:10-14. |
| 12 | For each order that it receives, Credco assembles information from the NCRAs and merges this information into the credit statements that it transmits to | Plaintiff objects to the statement as immaterial to Plaintiff's claims.  Subject to this objection the statement is disputed in part. The credit |

5

| | | |
|---|---|---|
| | potential lenders, which in this case were three credit statements (the "Statements") reflecting the information that Credco received from Experian, Equifax and TransUnion (collectively, the "NCRAs") in response to Credco's request for information about Plaintiff.<br><br>March 23, 2015 Declaration of Mercedes Vela ("Vela Decl.") ¶ 2. | report sold by Credco is not merged. The remainder of the averment is denied as stated. Credco admits in its own brief it is a consumer reporting agency and reseller of credit information as those terms are defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a *et seq.* ("FCRA").<br><br>*See* Ex. D, May 2014 Credco Report. |
| 13 | Credco's process works as follows. A lender or prospective lender submits to Credco information relating to the consumer applicant, which in this case included the name "Danny B. Baker," an address, and a Social Security number. Credco sends that information, without modification, to the NCRAs. The NCRAs' systems then receive these identifiers and evaluate the information they have assembled from their "furnisher" sources to determine which of that information relates to the subject consumer. The NCRAs then furnish that information to Credco.<br>Vela Decl., ¶ 3. | Plaintiff agrees that a lender provides Credco with identifying information about a consumer. Plaintiff agrees Credco provides that identifying information to the NCRAs. Plaintiff agrees that the NCRAs provide information to Credco in response. Plaintiff objects to the remainder or the statement as immaterial to Plaintiff's claim. Further, Credco fails to come forward with admissible evidence to support any statement about the procedures employed by any non-party NCRA as the declaration of Ms. Vela lacks any evidentiary foundation for the statement and Ms. Vela has not been designated as an expert witness with specialized knowledge on the subject. |

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| 14 | The NCRAs alone determine whether a particular account (*e.g.*, credit card or loan) relates to a specific consumer.<br><br>Vela Decl., ¶ 4. | The averment states a legal conclusion to which no response is required. Further, Credco has failed to come forward with any admissible evidence that would support such a conclusion. |
| 15 | Credco does not have any role or input when the NCRAs evaluate the information they receive from various sources and match it to particular consumers, nor does Credco have any access to or understanding of each NCRA's proprietary algorithms and matching logic.<br><br>Vela Decl., ¶ 4. | Plaintiff objects to the statement as immaterial to Plaintiff's claim. Subject to the objection, the averment is disputed as stated. Credco admits in its own brief that it is a consumer reporting agency and reseller of credit information as the term is defined by the Fair Credit Reporting Act, 16 U.S.C. § 1681a *et seq.* ("FCRA"). |
| 16 | Of the over 18 million reports resold each year by Credco, less than one half of one percent are disputed, only a fraction of which involve a consumer claiming that an account is not his or hers.<br><br>Vela Decl., ¶ 4. | Plaintiff objects to the statement as immaterial to Plaintiff's claims. Further, Credco fails to come forward with admissible evidence to support the statement as the declaration of Ms. Vela lacks an evidentiary foundation for the statement and upon further inquiry the statement was discovered to be based on inadmissible hearsay.<br><br>*See* Ex. A, Vela Feb 2015 Dep., at 52:19 - 57:19. |

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES

| 17. | Credco uses a proprietary technical process to accurately assemble and merge the information that is provided by its sources – the NCRAs – into its Statements.<br><br>Vela Decl., ¶ 4. | Disputed.  Credco's procedures result in the creation of credit reports that include all data supplied by Equifax, TransUnion and Experian relating to a consumer without alteration when it prepares consumer reports regardless of whether the information is accurate or not.  Further, the credit report at issue in this lawsuit prepared by Credco was not accurate.<br><br>*See* Ex. B, Vela Jan 2015 Dep., at 60:5 – 64:9; *See* Pl. Statement of General Disputes, at ¶ 7, 21. |
| --- | --- | --- |
| 18 | The Statements generated by Credco display the information received from the NCRAs using the rules required by the lender.<br><br>Vela Decl., ¶ 5. | Disputed. Credco's procedures for preparing credit reports are the same without regard to whom the report is being sold.  Further, Credco fails to come forward with admissible evidence to support the statement as the declaration of Ms. Vela lacks an evidentiary foundation for the statement.<br><br>*See* Ex. A, Vela Feb 2015 Dep., at 20:18 – 21:17.  *See* Pl. Statement of General Disputes Facts, at ¶ 21. |
| 19 | Credco displays all available information from all three NCRAs without alteration and | Disputed in part. Plaintiff agrees that Credco includes all data supplied by Equifax, |

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | in the format specified by the lender to enable the lender to review the information and determine if further inquiry with the consumer, NCRA, or credit furnisher is required before making a credit decision. Credco displays on the first page of the Statements the information originally submitted by the lender about the consumer applicant and conveyed to the NCRAs. Credco also displays the information received from the NCRAs in a manner to best aid the user in its review.  Each item of information appearing on the report indicates which NCRA provided it.  Credco also provides the contact information for the identified NCRA in the event that the consumer believes that there has been a mistake on his or her report and encourages the consumer to contact the NCRAs if they have any issues.<br><br>Vela Decl., ¶ 5. | TransUnion and Experian relating to a consumer without alteration when it prepares consumer reports. Plaintiff further agrees that Credco displays information submitted by the user about the consumer applicant on the first page. Plaintiff further agrees that each item of information that appears on Credco's credit reports indicate which NCRA provided the information. Plaintiff further agrees that Credco's report contains the address of NCRAs.   Plaintiff objects to the remainder statement on the grounds that Credco has not come forward with admissible evidence to support the statements regarding the expectations of third-party lenders beyond speculation. |
| 20 | Neither the NCRAs nor the lenders expect or require Credco to evaluate the data or second guess whether the credit furnisher or NCRA performed their roles properly.<br><br>Vela Decl., ¶ 5. | Disputed.  Plaintiff objects to the statement on the grounds that it in part contains a legal conclusion to which no response is required, and Credco has not come forward with admissible evidence to support the statements and upon further inquiry the statements are based on |

9

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | | speculation by Ms. Vela and/or hearsay.<br><br>*See* Ex. B, Vela Jan 2015 Dep., at ¶ 79:8 – 83:3. |
| 21 | Credco obtained information about Plaintiff from the NCRAs on May 22, 2014.<br><br>Vela Decl., ¶ 6; Plaintiff's Statements (Exhibits F through H to Appendix of Exhibits). | Undisputed. |
| 22 | To seek information from Credco on May 22, 2014: (1) Credco received a request for credit information from Borman; which included a Social Security number, the name "Danny B. Baker," and an address; (2) Credco transmitted all of the information received from Borman to the NCRAs without alteration; (3) the NCRAs used that information and their proprietary algorithms to provide information the NCRAs determined related to the subject consumer; and (4) Credco then accurately assembled and merged the information furnished by the NCRAs into the Statements.<br><br>Vela Decl., ¶ 6; Plaintiff's Statements (Exhibits F through H to Appendix of Exhibits). | Disputed in part. Plaintiff agrees that Borman requested a Credco report, that Borman provided Plaintiff's social security number, name, and address, and that the NCRAs provided information to Credco. Plaintiff objects to the remainder of the statements on the grounds that it makes a legal conclusion to which no response is required. |

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES

| 23 | The Statements reflected numerous instances of collection accounts, charged-off accounts, and unpaid civil judgments. Experian, TransUnion, and Equifax reported numerous delinquencies for different accounts. TransUnion and Equifax reported unique tradelines for accounts that were not reported by Experian. Experian reported tradelines that were not also reported by Equifax or TransUnion.<br><br>Vela Decl., ¶ 6; Plaintiff's Statements (Exhibits F through H to Appendix of Exhibits) | Disputed. Credco reported eight delinquent student loan accounts that did not belong to Plaintiff and were only reported by Experian.<br><br>*See* Ex. A, Feb 2015 Vela Dep, at 12:25 – 16:12. |
| --- | --- | --- |
| 24 | It is very common for one or more NCRAs to report tradelines that are not also reported by the other NCRAs. Such divergent reporting of tradelines is present in the vast majority of reports processed by Credco.<br><br>Vela Decl., ¶ 4. | Plaintiff objects to the statement as immaterial to Plaintiff's claim. Further, Credco fails to come forward with admissible evidence as Ms. Vela lacks any evidentiary foundation for the statement and Ms. Vela has not been designated as an expert witness with specialized knowledge on the subject. |
| 25 | Credco employed numerous measures to assure that it accurately assembled and merged the data received from the NCRAs as to Plaintiff. These measures included conducting data validation | Disputed. Credco's reports included all data supplied by Equifax, Experian and Trans Union without any regard for whether the information accurately belonged to Plaintiff or not. |

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES

| | | | |
|---|---|---|---|
| | | audits to assure there were no discrepancies between the data provided to and expected by the lender. Additionally, Credco's systems employ rules to make certain that the information being provided by each NCRA is consistent with the type of data typically furnished by the NCRAs about consumers. This process helps assure that the information is displayed consistent with the lender's requirements and expectations and is exactly as provided by the NCRAs. It also permits Credco to return an error code when an NCRA furnishes data that conflicts with the specifications provided by that NCRA or the lender. As to the Statements at issue, these processes did not raise any issues.<br><br>Vela Decl., ¶ 7. | *See* Ex. B, Vela Jan 2015 Dep., at 60:5 – 64:9 |
| | 26 | Plaintiff never notified Credco of any inaccuracies in the information contained in the Statements. Neither Experian, Equifax, nor TransUnion ever sent any communication informing Credco that the information it furnished about Plaintiff was not "accurate." Prior to furnishing the Statements at issue, and in fact prior to this lawsuit, Credco was | Plaintiff objects on the grounds that the statement is immaterial to Plaintiff's claim. Subject to this objection, Plaintiff agrees that he did not wage a dispute with Credco. |

12

| | | | |
|---|---|---|---|
| | | not informed of any the alleged inaccuracies in the Statements.<br><br>Vela Decl., ¶ 8. | |
| | 27 | Plaintiff also never contacted Experian to dispute any of the information that it reported about him before May 22, 2014, even though Experian reported to Credco (which in turn reported to Borman) that there had been eight recent credit pulls on Plaintiff's behalf from Experian from seven different companies within the past two years alone.<br><br>Baker Dep., pp. 166-67; Vela Decl., ¶ 6; Plaintiff's Experian Statement (Exhibit F to Appendix of Exhibits ). | Plaintiff objects on the grounds that the statement is immaterial to Plaintiff's claim.  Subject to this objection, Plaintiff agrees that he did not wage a dispute with Experian. |
| | 28 | Plaintiff does not dispute any of the delinquent tradelines appearing on any of the Statements except for the educational loans identified on the Experian Statement.<br><br>Baker Dep., p. 108. | Plaintiff objects on the grounds that the statement is immaterial to Plaintiff's claims. |
| | 29 | Credco has no basis to know why a NCRA such as Experian decides that a particular account relates to a particular consumer. Nor does Credco have the tools or access to sources necessary to make a determination in this | Disputed.  Credco is aware that consumer credit file from NCRAs can be mixed with credit data that belongs to another consumer. |

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | regard.  Credco has no knowledge of how or why the NCRAs matched the allegedly inaccurate information to Plaintiff.  The NCRAs did not provide Credco with the personal identifying information that the furnishers provided to them along with the account(s) at issue.  Nor did the NCRAs provide Credco with the matching logic or algorithms that they used to determine which accounts and information relate to Plaintiff.<br><br>Vela Decl., ¶ 9. | *See* Pl. Statement of General Disputes, at ¶ 22-23. |
| 30 | Credco accurately assembled and merged the information received from the NCRAs about Plaintiff pursuant to its established technological procedures.<br><br>Vela Decl., ¶¶ 6-7. | Disputed.  The reports sold by Credco about Plaintiff contain numerous inaccuracies.<br><br>*See* Pl. Counter-Statement of Material Facts, at ¶ 4-7. |
| 31 | None of the information reported by Credco across the three NCRAs as to Plaintiff substantively conflicted.<br><br>Vela Decl., ¶ 6; Plaintiff's Statements (Exhibits F through H to Appendix of Exhibits). | Disputed. The reports sold by Credco about Plaintiff contained conflicting information.<br><br>*See* Pl. Counter-Statement of Material Facts, at ¶ 14-16. |
| 32 | Apart from the student loan tradelines identified by Plaintiff on the Experian Credit Statement, Plaintiff does not | Plaintiff objects on the grounds that the statement is immaterial to Plaintiff's claims. |

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES

| | | | |
|---|---|---|---|
| | | contest the accuracy of any of the additional judgments or tradelines reported by the NCRAs.<br><br>Baker Dep., pp. 108-111. | |
| | 33 | Plaintiff testified that there is "no way to know" what, if anything, might have been different as to Plaintiff's credit score or alleged May 2014 financing application had the challenged accounts not been reported.<br><br>Baker Dep., pp. 186. | Plaintiff objects on the grounds that the statement is immaterial to Plaintiff's claims. Plaintiff further objects that the statement is unsupported by the evidence cited. |
| | 34 | Plaintiff does not know the identity of the third-party banks that he claimed denied him financing in May 2014.<br><br>Baker Dep., pp. 101-02. | Disputed.  Plaintiff referred to a list of banks that Borman often uses to finance auto loans.<br><br>*See* Ex. C, Baker Dep. at 101:16-20. |
| | 35 | Plaintiff suffered no emotional distress damages as a result of Credco's reporting in 2014<br><br>Borman Dep. pp. 27; 41-42; 47; 57; 63; 74; 89-91; 92-102; 117-19; 129-30; Exhibit C to Appendix of Exhibits; Exhibit D to Appendix of Exhibits. | Disputed. Plaintiff suffered emotional distress including but not limited to embarrassment, worry and strain on Plaintiff's relationship with his girlfriend.<br><br>*See* Ex. C, Baker Dep, at 167:8 – 24. |
| | 36 | Plaintiff suffered no actual credit-related damages as a result of Credco's reporting in May 2014. | Disputed. Plaintiff was denied credit between May 2014 and September 2014 and was ultimately only able |

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | Borman Dep. pp. 27; 41-42; 47; 57; 63; 74; 89-91; 92-102; 117-19; 129-30; Exhibit C to Appendix of Exhibits; Exhibit D to Appendix of Exhibits; Exhibit E to Appendix of Exhibits. | to obtain financing at an unfavorably high interest rate.<br><br>*See* Ex. E, Hamberg Dep., at 100:8-14, 104:18- 108:8; *See* Ex. H, Adverse Action Letter; *See* Ex. M, Loan Terms Sheet; *See* Ex. C Baker Dep at 93:16 – 25. |

## PLAINTIFF'S COUNTER-STATEMENT OF GENUINE DISPUTES OF MATERIAL FACTS

| NO. | MATERIAL FACTS | SUPPORT |
|---|---|---|
| 1 | Plaintiff is a car salesperson at Borman Auto Group ("Borman") in Las Cruces, New Mexico. | *See* Ex. C., Baker Dep, at 22:8-10. |
| 2 | As a car salesperson, Plaintiff regularly engages in transactions that involve the sale and financing of automobiles, and, as such, possesses specialized knowledge of auto financing, in particular, auto financing that occurs at Borman Auto Group. | *See* Ex. C, Baker Dep., at 22:8-23:13, 103:7 - 104:4; Ex. E, Hamberg Dep., at 105:7-106:13 |
| 3 | In May 2014, Plaintiff sought to purchase a Volvo from Borman primarily because Plaintiff was looking for a safe car to transport his daughter. In order to purchase the car, Plaintiff attempted to obtain an auto loan to finance the purchase. | *See* Ex. C, Baker Dep., at 29:3-8, 78:1 - 83:12; 86:3 - 95:8; Ex. I, Volvo Application. |
| 4 | Plaintiff, however, was unable to purchase the Volvo because he was | *See* Ex. E, Hamberg Dep., at 107:20 - |

| | | |
|---|---|---|
| | unable to able obtain financing for the automobile. | 108:5; Ex. C, Baker Dep., 29:3-8, 93:13-15; Ex. H, Adverse Action Letter. |
| 5 | In connection with Plaintiff's application for credit, Credco credit reports were sold to Borman and used to review Plaintiff's credit history. | *See* Ex. D, Credco credit reports (from Borman file); Ex. E, Hamberg Dep., at 106:14 - 107:2. |
| 6 | Credco specifically sold to Borman three separate reports simultaneously, each containing information received from one of the national credit bureaus Experian, Equifax and TransUnion. | *See* Ex. D, Credco Credit Reports (Borman copies); Ex. J, Credco report with Experian data; Ex. K, Credco report with Equifax data; Ex. L, Credco report with TransUnion data. |
| 7 | The Credco report of the Experian data erroneously included eight delinquent student loan accounts which did not belong to Plaintiff but instead to Plaintiff's deceased father totaling $20,734 in past due installment debts. | *See* Ex. A, Feb 2015 Vela Dep., at 12:25 – 16:12; Ex. J, Credco report with Experian data. |
| 8 | The Credco report of Equifax data did not include any student loans and installment debts totaling only $361. | *See* Ex. A, Feb 2015 Vela Dep., at 12:25 – 16:12; Ex. K , Credco report with Equifax data. |
| 9 | The Credco report of TransUnion data did not include any student loans and installment debts totaling $0. | *See* Ex. A, Feb 2015 Vela Dep., at 12:25 – 16:12; Ex. L, Credco report with TransUnion data. |

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| 10 | The only credit score that Credco provided to Borman was Plaintiff's Experian score, which was based on the erroneous student loan information. | *See* Ex. A, Feb 2015 Vela Dep., 10:22 - 11:14. |
| 11 | Accordingly, the erroneous Credco report and score from Experian was relied on exclusively to assess Plaintiff's credit history and was a substantial factor adversely affecting Plainitff's ability to obtain credit. | *See* Ex. E, Hamberg Dep., at 106:14 - 109:20; Ex. C, Baker Dep., at 98:11 - 99:18. |
| 12 | The erroneous and delinquent student loan accounts on the Credco were thus made known to Plainitiff's manager and his inability to obtain financing became known to his co-workers which caused humiliation and embarrassment to Plaintiff. | *See* Ex. C, Baker Dep., at 98:11 - 99:18, 100:14 - 101:4; 168:5-15; |
| 13 | Plaintiff was ultimately forced to purchase a less desirable Honda Accord and at a highly unfavorable interest that could have been more competitive if not for the erroneous credit information reported by Credco. | *See* Ex. C, Baker Dep., at 123:24 - 125:24; Ex. E, Hamberg Dep., at 108:21 - 109:20; Ex. M, Terms Sheet for Honda Loan. |
| 14 | These circumstances caused substantial embarrassment anxiety and emotional distress including: feeling embarrassed in front of his co-workers; being teased and called a "roach" by his co-workers; experiencing difficulties getting to work because he did not have a car temporarily; strain on his relationship | *See* Ex. C, Baker Dep., at 167:5 - 167:24, 168:13 - 170:2, 170:11 - 170:17, 171:1 - 178:5, 178:25 - 179:9, 181:20-22. |

18

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES

| | | | |
|---|---|---|---|
| | | with his girlfriend which included arguing and fighting because he could not get a car; loss of sleep; weight loss and worry about not having a means of transportation. | |
| | 15 | Credco admits it is a "consumer reporting agency" and a "reseller" of credit information as those terms are defined under the Fair Credit Reporting Act ("FCRA"). | *See* Ex. B, Vela Jan 2015 Dep., at 23:6-8. |
| | 16 | Credco also admits that as a consumer reporting agency and reseller it is obliged to comply with Section 1681e(b) of the FCRA, which requires that companies such as Credco follow reasonable procedures to assure the maximum possible accuracy of the information they sell in their reports. | *See* Ex. B, Vela Jan 2015 Dep., at 23:17-22; Ex. F, Barnard Oct 2013 Dep., at 27:3-8 |
| | 17 | Credco further proclaims itself to be the "nation's number one provider of merged and specialized credit reports." | *See* Credco Website, at https://www.credco.com/company |
| | 18 | Credco also will sell a single report with all three national credit bureaus merged as well as separate individual credit reports from each national credit bureau as it did in this case. | *See* Ex. A, Vela Feb 2015 Dep., at 8:23 - 9:18 |
| | 19 | Credco's representative likewise confirmed that "merging" of credit data is not critical to the definition of a reseller. | *See* Ex. A, Vela Feb 2015 Dep., at 17:8 - 13 |
| | 20 | Credco markets its credit reports as "a solution to the problem of data discrepancies between the three national credit bureaus" that "contains | *See* Credco Website, at https:// www.credco.com/company |

19

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES

| | | |
|---|---|---|
| | the most accurate information available on the consumer." | |
| 21 | Credco's procedures for preparing credit reports, however, do nothing to identify or reconcile discrepancies in the data it receives or ensure the information about the consumer is accurate. | *See* Ex. F, Barnard Oct 2013 Dep, at 27:22 – 28:1, 28:14-29:6, 40:2-9, 41:12 – 41:14; Ex. B, Vela Jan 2015 Dep., at 24:12–19 |
| 22 | Credco does this despite the fact that it knows that negative information appearing on these reports adversely affects loan applicants who are the subject of the reports. | *See* Ex. F, Barnard Oct 2013 Dep., at 49:19 - 50:14, 55:22-56:4; Ex. B, Vela Jan 2015 Dep., at 37:10-14 |
| 23 | Credco also does this despite being aware that the national consumer reporting agencies' data is commonly susceptible to being "mixed" -- information of one consumer being merged with that of another consumer. | *See* Ex. G, Barnard Sept. 2013 Dep., at 87:10-16; Ex. F, Barnard Oct 2013 Dep., at 105:1-9, 106:5-16. |
| 24 | Credco's computing systems are specifically capable of identifying when the report contains credit information that does not belong to a consumer. Credco's own product documentation explains that its computer system can analyze the credit data and can generate "A list of accounts that may not belong to the applicant. The superscript ID# refers back to the Identification Information section's possible non-applicant information and will include additional information on any discrepancies between the applicant and the listing." | *See* Credco Website Sample Report at Section 15, at https://www.credco.com/assets/pdfs/ sample-reports/ Instant-Merge-Views-Callouts.pdf |

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES

| 25 | Credco acknowledges that its computer systems are capable of performing this analysis in seconds, yet Credco still chooses to sell the report with the inaccuracies. | *See* Ex. F, Barnard Oct 2013 Dep., at 156:8-22, 158:10-18. 153:7-19; Ex. B, Vela Jan 2015 Dep., at 100:11-17;  105:8 - 106:15 |
|----|----|----|
| 26 | Credco further has remarkably orchestrated a system where it stands to profit from the inaccuracies that it reports to lenders by charging lenders to have inaccuracies corrected after the sale of the report. | *See* Ex. F, Barnard Oct 2013 Dep., at 129:3-18, 130:16-21,136:4-7. Ex. B, Vela Jan 2015 Dep., at 94:15 – 18. |

Respectfully submitted,

Dated: March 30, 2015       FRANCIS & MAILMAN, P.C.

By:   /s/ Gregory Gorski
      Gregory Gorski

*Attorneys for Plaintiff*

PLAINTIFF DANNY BAKER'S STATEMENT OF GENUINE DISPUTES