THOMAS H. PROUTY, Bar No. 238950
thomas.prouty@troutmansanders.com
TROUTMAN SANDERS LLP
5 Park Plaza, Suite 1400
Irvine, CA  92614-2545
Telephone:  949.622.2700
Facsimile:   949.622.2739

TIMOTHY J. ST. GEORGE (*pro hac vice*)
tim.stgeorge@troutmansanders.com
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone:  804.697.1200
Facsimile:   804.697.1339

*Attorneys for Defendant*
*CoreLogic Credco, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| Danny Baker,<br><br>             Plaintiff,<br><br>v.<br><br>CoreLogic Credco, LLC,<br><br>             Defendant. | Case No. 8:14-cv-01011-AG-AN<br><br>Hon. Andrew J. Guilford<br><br>**DEFENDANT CORELOGIC CREDCO, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      June 1, 2015<br>Time:      10:00 a.m.<br>Place:     Courtroom 10D |

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

25363619

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 - 2545

# **TABLE OF CONTENTS**

**Page**

1.   INTRODUCTION ................................................................. 1

2.   PLAINTIFF SUFFERED NO DAMAGES AS A RESULT OF THE MAY 2014 EXPERIAN STATEMENT ........................................ 2

3.   PLAINTIFF HAS NO FACTS TO SUPPORT HIS LIABILITY CLAIM ........................................................................... 6

    3.1   Plaintiff Does Not Dispute the Facts Demonstrating the Reasonableness of Credco's Procedures ............................. 6

    3.2   Plaintiff Grossly Mischaracterizes Other Products Offered by Credco ....................................................................... 7

    3.3   Plaintiff Offers No Suggestion for How Credco Could Possibly, Let Alone Reasonably, "Rectify" the Inaccuracies Alleged Here ...... 10

4.   PLAINTIFF DOES NOT ADDRESS CREDCO'S REASONED INTERPRETATION OF THE FCRA ....................................... 12

    4.1   The FCRA Provides that Resellers Assemble and Merge Credit Data, But Do Not Evaluate that Data ............................. 12

    4.2   There is No Dispute that Credco Properly Assembled and Merged the Experian Information ................................... 14

    4.3   The Policy Goal of Accuracy is Advanced by Recognizing the Limited Role and Duties of the Reseller ............................. 15

    4.4   Plaintiff Relies on Legal Authority Involving Inapplicable Legal Arguments and Limited Factual Information ................. 16

5.   PLAINTIFF OFFERS NO EVIDENCE TO SHOW THAT CREDCO'S RELIANCE ON THE NCRAS WAS UNREASONABLE ..... 17

6.   PLAINTIFF HAS PUT FORTH NO PROBATIVE EVIDENCE OF A WILLFUL VIOLATION OF THE FCRA ................................... 20

7.   CONCLUSION ................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. McIntosh Constr., LLC*,
No. 14-5783, 2015 U.S. App. LEXIS 404 (6th Cir. 2015) ............................... 11

*Anderson v. Trans Union LLC*,
367 F.Supp.2d 1225 (W.D. Wis. 2005) ............................................................... 22

*Benson v. Trans Union, LLC*,
387 F. Supp. 2d 834 (N.D. Ill. 2005) ................................................................. 11

*Bruno v. Eckhart Corp.*,
280 F.R.D. 540 (C.D. Cal. 2012) ........................................................................ 17

*Bynum v. Cavalry Portfolio Servs., LLC*,
No. 04-CV-0515, 2005 U.S. Dist. LEXIS 48776 (N.D. Okla. Sept. 29,
2005) ................................................................................................................................. 8

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) .............................................................................. 15

*Cosmas v. Am. Express Centurion Bank*,
757 F. Supp. 2d 489 (D.N.J. 2010) ............................................................... 8, 21

*Dennis v. BEH-1, LLC*,
520 F.3d 1066 (9th Cir. 2008) .............................................................................. 5

*Dirosa v. Equifax Info. Servs. LLC*,
No. 13-131, 2014 U.S. Dist. LEXIS 108379 (C.D. Cal. Jan. 21, 2014) ........... 16

*Dively v. Trans Union, LLC*,
No. 11-3607 2012 U.S. Dist. LEXIS 9314 (E.D. Pa. Jan. 26, 2012) .......... 12, 18

*Eller v. Experian Info. Solutions, Inc.*,
No. 09-cv-40, 2011 U.S. Dist. LEXIS 85858 (D. Colo. May 17, 2011) ........... 21

*Gorman v. Wolpoff & Abramson, LLP*,
584 F.3d 1147 (9th Cir. 2009) .............................................................................. 5

*Grigoryan v. Experian Info. Solutions, Inc.*,
No. 13-07450, 2014 U.S. Dist. LEXIS 181916 (C.D. Cal. Dec. 18, 2014) ... 7, 19

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614 -2545

- ii -

### TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Guimond v. Trans Union Credit Info. Co.*,
    45 F.3d 1329 (9th Cir. 1995)................................................................4, 5

*Hariton v. Chase Auto Fin. Corp.*,
    No. CV 08-6767, 2010 U.S. Dist. LEXIS 88659 (C.D. Cal. Aug. 4, 2010).......2

*Kramer v. Thomas*,
    No. CV 05-8381, 2006 U.S. Dist. LEXIS 96714 (C.D. Cal. Sept. 28,
    2006)..................................................................................................6

*Long v. Tommy Hilfiger U.S.A.*,
    671 F.3d 371 (3d Cir. 2012)..............................................................22

*Miller v. TransUnion, LLC*,
    2013 U.S. Dist. LEXIS 140851 (M.D. Pa. Aug. 14, 2013)...............................8

*Mortimer v. Bank of Am., N.A.*,
    No. C-12-01959, 2013 U.S. Dist. LEXIS 2993 (N.D. Cal. Jan. 3, 2013).........16

*O'Brien v. Equifax Info. Servs., LLC*,
    382 F. Supp. 2d 733 (E.D. Pa. 2005) ...............................................11

*O'Connor v. Trans Union Corp.*,
    No. 97-4633, 1999 U.S. Dist. LEXIS 14917 (E.D. Pa. Sept. 28, 1999)............11

*Philbin v. Trans Union Corp.*,
    101 F.3d 957 (3d Cir. 1996)..............................................................11

*Poore v. Sterling Testing Sys., Inc.*,
    410 F. Supp. 2d 557 (E.D. Ky. 2006)................................................12

*Richards v. City of Seattle*,
    342 Fed. Appx. 289 (9th Cir. 2009) ...................................................4

*Robinson v. Equifax Info. Servs., LLC*,
    560 F.3d 235 (4th Cir. 2009)..............................................................21

*Saenz v. Trans Union, LLC*,
    621 F. Supp. 2d 1074 (D. Or. 2007).................................................6, 7

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614 -2545

- iii -

1

## <u>TABLE OF AUTHORITIES</u>
### (continued)

**Page(s)**

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) ................................................................ 20, 21, 22

*Schmitt v. Chase Manhattan Bank, N.A.*,
   No. 03-3295, 2005 U.S. Dist. LEXIS 18029 (D. Minn. 2005) ......................... 18

*Serfess v. Equifax Credit Information Svcs.*,
   2014 U.S. Dist. LEXIS 120138 (D.N.J. 2014) .................................. 18

*Souza v. Estate of Bishop*,
   821 F.2d 1332 (9th Cir. 1987) ................................................... 7

*Starkey v. Experian Info. Solutions, Inc.*,
   32 F. Supp. 3d 1105 (C.D. Cal. 2014) ...................................... 16, 17

*Taylor v. CoreLogic SafeRent, LLC*,
   1:13cv3435, Dkt. No. 50 p. 27 (N.D. Ga. Oct. 23, 2014) ..................... 22

*Toliver v. Experian Info. Solutions, Inc.*,
   973 F. Supp. 2d 707 (S.D. Tex. 2013) ....................................... 21

*Torrance v. CitiFinancial Mortg. Co.*,
   No. 1:08-CV-403, 2008 U.S. Dist. LEXIS 123415 (S.D. Ohio Dec. 24,
   2008) ................................................................................. 12

*United States v. Calamaro*,
   354 U.S. 351 (1957) ............................................................. 13

*Valentine v. First Advantage SafeRent, Inc.*,
   No. 08-142, 2008 U.S. Dist. LEXIS 80764 (C.D. Cal. Sept. 23, 2008) ............ 18

*Waterman v. Experian Info. Solutions, Inc.*,
   No. 12-01400, 2013 U.S. Dist. LEXIS 35455 (C.D. Cal. Feb. 25, 2013) ......... 12

*Weinberg v. Whatcom Cnty.*,
   241 F.3d 746 (9th Cir. 2001) ................................................... 4

*Zeltser v. City of Oakland*,
   63 Fed. Appx. 296 (9th Cir. 2003) ............................................. 5

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

DEFENDANT CORELOGIC CREDCO, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**STATUTES**

15 U.S.C. § 1681a(f) ................................................................. 12

15 U.S.C. § 1681a(u) ......................................................... 12, 13, 14

15 U.S.C. § 1681e(b) ........................................................... *passim*

15 U.S.C. § 1681i .................................................................. 15, 20

15 U.S.C. § 1681i(f)(2)(B)(ii) ..................................................... 15

**OTHER AUTHORITIES**

16 C.F.R. pt. 607(3)(D) ............................................................. 18

Fed. R. Civ. P. 32(a)(8) ............................................................. 8

DEFENDANT CORELOGIC CREDCO, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1. **INTRODUCTION**

Plaintiff's opposition to CoreLogic Credco, LLC's ("Credco") motion for summary judgment ignores Credco's reasoned interpretation of the FCRA, and instead opposes legal arguments not made here.  Indeed, none of the cases cited by Plaintiff considered the arguments before the Court in this case.

Plaintiff would have the Court believe that Credco is attempting to shirk its FCRA accuracy obligations.  But nowhere does Credco argue that it is excused from these obligations, or that 15 U.S.C. § 1681e(b) does not apply to it.  To the contrary, Credco has set forth how this section applies to resellers and has supported its arguments with the language of the FCRA, caselaw interpreting the duties of credit reporting agencies, and common sense.  Plaintiff offers no viable competing theory.  His argument is that, because 1681e(b) applies to Credco, it is liable for any alleged inaccuracy, regardless of whether Credco had a legal duty or a practical ability to detect or cure the alleged inaccuracy.  This theory amounts to strict liability, which courts have consistently acknowledged is not the proper standard.

Credco has provided evidence of its procedures, and has shown how and why these procedures are reasonable to assure maximum possible accuracy.  Plaintiff does not dispute these procedures.  He vaguely claims that Credco should have done something to "rectify inaccuracies" caused by Experian, but offers no suggestion of how Credco could have possibly (let alone reasonably) done that in this case.  His inflammatory claims about other products that Credco offers to lenders are wrong, as are the conclusions he attempts to draw from the testimony regarding "mixed files".  Credco lacks the duty or the ability to detect or cure the inaccuracies alleged here.  The FCRA's goal of maximum possible accuracy is not served by requiring resellers to tamper with credit information in a vacuum.

With respect to damages, Plaintiff attempts to manufacture a fact issue by pointing to documents that have nothing to do with Credco.  Plaintiff alleges that

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

- 1 -

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614 -2545

Credco provided three credit statements relating to him on May 22, 2014, including one from Experian (the "Experian Statement"). There is no credit application dated May of 2014 and the alleged prospective creditor, Borman Auto Group ("Borman"), testified that no one denied Plaintiff financing at that time. These facts are not genuinely in dispute. In his opposition, Plaintiff points to irrelevant documents indicating that he applied for and received financing several months later, and an adverse action letter dated October 4, 2014. Credco had no involvement with these subsequent transactions, and Plaintiff has not even alleged otherwise. As the Experian Statement did not result in a credit denial, Plaintiff's claims for actual damages, which are expressly based on the existence of that alleged credit denial, collapse.

Finally, as even cases cited by Plaintiff hold, under the facts of this case and the arguments advanced by Credco, no willful violation of the FCRA is possible.

## 2.   PLAINTIFF SUFFERED NO DAMAGES AS A RESULT OF THE MAY 2014 EXPERIAN STATEMENT

Plaintiff concedes in his Opposition that the lynchpin of his claim for actual damages is an alleged denial of credit. In fact, Plaintiff opens this section of his Opposition by stating: "Plaintiff has proffered evidence that he was denied an auto loan in substantial part because of inaccuracies on his Credco [Experian] report." Pltf's Opp. at p. 16. Yet there is no genuine dispute as to the fact that the May 22, 2014 Experian Statement did not result in a credit denial. Therefore, Plaintiff's damages claim cannot survive summary judgment and Credco's motion for summary judgment should be granted. *Hariton v. Chase Auto Fin. Corp.*, No. CV 08-6767, 2010 U.S. Dist. LEXIS 88659, at *13 (C.D. Cal. Aug. 4, 2010) ("[D]amages are an element of a claim for a negligent violation of the FCRA.").

Plaintiff contends that he has submitted evidence to "show adverse action was taken and documents that confirm Plaintiff did in fact accept a highly-unfavorable loan in order to obtain a less desirable car," Pltf's Opp. at p. 17.

25363619

However, he glosses over one important fact – **none of the "evidence" he submitted has to do with the May 2014 credit pull, the only one involving Credco**. Plaintiff cites to an unsigned, undated credit application, a terms sheet dated July 23, 2014, an application and financing statement dated September 1, 2014, and an adverse action letter dated October 4, 2014.   Pltf's Opp. at pp. 17-18. There is no credit application dated on or about May 22, 2014, and no indication of any credit decision on or about that date.  *See id.*; *see also* Borman Dep., pp. 27; 57; 99-101.  Plaintiff admittedly sought and received financing through Borman on multiple occasions before and after May of 2014 (based on credit scores that were the same *or lower* than the Experian score returned by Credco in May 2014), but there is no allegation that Credco had any involvement with those transactions, *see* Borman Dep., pp. 89-91; 92-96; 117-119; Baker Dep., pp. 129-30; Def's Exs. C-D, nor did it.  Vela Decl., ¶ 8.

Indeed, Borman unequivocally testified that no one denied Plaintiff financing in May 2014:

Q.     So what I'm asking you is: Are you aware of any decision at Borman in May of 2014 to deny Mr. Baker credit?

A.     Oh, no.

Q.     Are you aware of any decision by any third-party finance company, in May 2014, to deny Mr. Baker credit?

A.     No, not -- you're saying specifically May?

***

Q.     Right, I'm asking about May.

A.     Okay. So my answer's no.

Borman Dep., pp. 99-100.  Borman further testified that, had he applied, Plaintiff would have been *granted* credit based on the credit score returned by Experian on May 22, 2014.  Borman Dep., pp. 47; 63; 74; 99-101.  Plaintiff cites to portions of Borman's testimony that do not reference the May 2014 credit pull, and instead

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

DEFENDANT CORELOGIC CREDCO, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1  reference the September transaction, or generally describe how the application

2  process works.[1]  *See* Pltf's Opp. at pp. 16-18.  There is a complete absence of any

3  proof that Plaintiff made a legitimate application for financing in <u>May 2014</u>, let

4  alone that he was denied financing at that time.  *See id.*

5       To support his damages claim, Plaintiff is left with nothing but his own self-

6  serving testimony of what Brian Hamberg at Borman allegedly told him.  Not only

7  is this testimony inadmissible hearsay, *see Richards v. City of Seattle*, 342 Fed.

8  Appx. 289, 290 (9th Cir. 2009), but it is also contradicted by Mr. Hamberg himself,

9  who testified as Borman's corporate representative:

10      Q.    Are you aware of any discussions that anyone might have had with Mr.

11            Baker about the May 2014 credit pull?

12      A.    No.

13  Borman Dep., p. 101. There is simply no basis on which a reasonable fact finder

14  could conclude that Plaintiff was denied credit.[2]

15      Plaintiff argues that his own testimony is sufficient to create a fact question,

16  *see* Pltf's Opp. at p. 17-18, but the cases he cites in his Opposition are

17  distinguishable.  In *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th

18  Cir. 1995), the plaintiff sought damages for emotional distress after Trans Union

19

20  [1] Borman further testified that Plaintiff was not actually denied credit in
connection with the September transaction that was ultimately consummated with a

21  third party bank.  Rather, Plaintiff preferred third party financing: "We didn't
technically deny him. The benefit of going through a third party is that it will reflect

22  on his credit bureau and he can gain positive scores.  Versus if Borman finances it,
it doesn't reflect on his credit bureau, he doesn't gain anything and he doesn't lose
anything. So we used Westlake to better his credit."  Borman dep. p. 100-101.

23  [2] Even if there were a genuine dispute as to the theoretical existence of
damages, Plaintiff does not address Credco's argument that any such damages

24  would be the product of pure speculation.  Plaintiff provides no possible basis for
the Court to quantify such damages (*e.g.*, the delta – if any –between the interest

25  rate he received a few months later upon credit approval and that which he claims
he should have received in May 2014).  No documents, expert testimony, or other

26  computations have been set forth.  If the parties have "no expert witnesses or
designated documents providing competent evidence from which a jury could fairly

27  estimate damages," summary judgment is required. *Weinberg v. Whatcom Cnty.*,
241 F.3d 746, 751 (9th Cir. 2001)).  Even independent from the fact that no such

28  denial occurred, any claims for credit-related actual damages must be dismissed.

25363619

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE · CA  92614 - 2545

1  failed to remove inaccurate information from her credit report after a year of

2  disputes.  The plaintiff alleged that she was deterred from applying for credit while

3  the inaccuracies existed, but there was no allegation of a credit denial.  *Id.* at 1332

4  n.2.  Trans Union did not dispute that inaccuracies in the plaintiff's credit report

5  were the cause of her damages.  *See id.*  Here, Plaintiff specifically claims that his

6  emotional distress was triggered by a credit denial and a resulting inability to obtain

7  a vehicle.  Pltf's Opp. at p. 16.  But no credit denial resulted from the May 2014

8  Experian Statement.  Thus, there can be no genuine dispute that the alleged lack of

9  transportation and resulting emotional distress were not caused by Credco.[3]

10      *Dennis v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir. 2008), and *Gorman v.*

11  *Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009), similarly accepted as

12  undisputed plaintiffs' testimony that they were denied credit as a result of allegedly

13  inaccurate information in their credit reports, and found that the plaintiffs were not

14  required to submit additional corroborating evidence of damages to survive

15  summary judgment.  *Dennis v. BEH-1, LLC*, 520 F.3d at 1068; *Gorman v. Wolpoff*

16  *& Abramson, LLP*, 584 F.3d at 1151-53.  But in this case, Plaintiff's testimony is

17  not just uncorroborated, it is inadmissible hearsay that is flatly contradicted by the

18  creditor (in fact, the very same person) who he claims denied him.

19      Thus, in light of these undisputed facts, Plaintiff's testimony as to causation

20  and damages is not sufficient to create a genuine issue of fact for trial.  *See, e.g.,*

21  *Zeltser v. City of Oakland*, 63 Fed. Appx. 296, 298 (9th Cir. 2003) (affirming

22  granting of summary judgment because plaintiff "offered no evidence in support of

23  her claim that she suffered emotional distress.").

24

25

26      [3] Plaintiff also testified that he missed time at work because he was unable to find transportation. Baker Dep., p. 167.  Borman testified that it was not aware of any missed days at work.  Borman Dep., p. 20.  Credco has sought Plaintiff's

27  employment records from Borman, which could definitively disprove this allegation.  Plaintiff, however, has opposed Credco's efforts to obtain this

28  information through its Motion for Protective Order.  (Dkt. No. 34.)

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

DEFENDANT CORELOGIC CREDCO, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

**3.     PLAINTIFF HAS NO FACTS TO SUPPORT HIS LIABILITY CLAIM**

Even apart from lack of any actual damages, there is no basis to find that Credco violated § 1681e(b) based upon the allegations in the Complaint, to which Plaintiff is bound. *Kramer v. Thomas*, No. CV 05-8381, 2006 U.S. Dist. LEXIS 96714, at *6 (C.D. Cal. Sept. 28, 2006) (a party is "bound" by the allegations of the operative complaint when opposing summary judgment). § 1681e(b) calls for "reasonable procedures to assure maximum possible accuracy." Courts have long recognized that this is not a "strict liability" standard. *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1080 (D. Or. 2007). Thus, summary judgment is required if a defendant "establishes that an inaccurate report was generated despite the agency's following reasonable procedures." *Id.*

Plaintiff alleges that Credco failed to follow reasonable procedures to assure maximum possible accuracy by failing to "investigate" the differences between the information received from the NCRAs, and transmitting the Experian Statement notwithstanding the fact that it contained information not reported by the other NCRAs. Complaint, ¶¶ 15-16. His Opposition echoes these allegations, claiming that Credco should have "rectified inaccuracies" in the Experian Statement. Pltf's Opp. at p. 1.

**3.1     Plaintiff Does Not Dispute the Facts Demonstrating the Reasonableness of Credco's Procedures**

However, the facts establishing the reasonableness of Credco's procedures under § 1681e(b) are undisputed. Indeed, Plaintiff's brief pays little regard to the actual facts of this case. In his opposition brief, Plaintiff offered no evidence to dispute the following facts:

- Credco requires lenders to enter in full identifying information, including a full Social Security number, for the subject consumer;

- Credco transmits this exact information to the NCRAs;

- Credco then assembles and merges the information returned from

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

the NCRAs using audited, technical processes, into statements for the lender that display all of the information received and indicate which NCRA provided it;

- Credco accurately assembled and merged the information it received from Experian into the Experian Statements;

- Credco receives a very low volume of disputes (less than one-half of one percent) with respect to the NCRA data, only a fraction of which claim that the information sent by Credco does not belong to the subject consumer;

- Credco had no actual notice of an inaccuracy, as Plaintiff never attempted to notify Experian or Credco of the allegedly inaccurate information, which Experian had been reporting since at least 2012;

- The reporting of varying tradelines by the NCRAs is common and is no indication of substantive inaccuracy; and

- Plaintiff admits that six other derogatory items, including two civil judgments and four collection accounts, reported by only one NCRA *are* accurate (*see infra*).

*See* Vela Decl., ¶¶ 1-9; Def's Exs. F-H; Baker Dep., pp. 108-111.

Plaintiff failed to counter any of these facts, as was his burden. *Souza v. Estate of Bishop*, 821 F.2d 1332, 1334 (9th Cir. 1987) ("The party opposing summary judgment has the burden of presenting specific probative evidence as to any fact claimed to be disputed."). Summary judgment is therefore required. *See, e.g.*, *Grigoryan v. Experian Info. Solutions, Inc.*, No. 13-07450, 2014 U.S. Dist. LEXIS 181916, at * 64-65 (C.D. Cal. Dec. 18, 2014) (granting summary judgment under § 1681e(b)); *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1080 (D. Or. 2007) (granting summary judgment under § 1681e(b)).

### 3.2 Plaintiff Grossly Mischaracterizes Other Products Offered by Credco

Rather than dispute these material facts, Plaintiff resorts to mischaracterizing Credco's testimony from this and another, unrelated case. First, Plaintiff makes

much of Credco's testimony that it is generally aware that "mixed files" may have occurred with respect to *some* of the millions of reports it has sold.  Pltf's Opp. at p. 3.  However, he does not mention that "some" means something less than *one half of one percent*.  Credco has provided undisputed evidence that it receives disputes for *less than* one half of one percent of the statements that it provides, and only a fraction of those disputes even allege that a report contained unrecognized information. [4]  In the face of this negligible dispute volume, Credco's general awareness that "mixed files" can possibly occur does not create a genuine issue of fact for trial.  The FCRA does not require Credco to guarantee 100% accuracy. *Miller v. TransUnion, LLC*, 2013 U.S. Dist. LEXIS 140851 (M.D. Pa. Aug. 14, 2013) ("The FCRA does not . . . make these services guarantors of the perfect accuracy of the data they collect."); *Cosmas v. Am. Express Centurion Bank*, 757 F. Supp. 2d 489, 498 (D.N.J. 2010) ("A [defendant's] obligation under the [FCRA] is to employ reasonable procedures, not perfect ones.") (quoting *Anderson v. Trans Union LLC*, 367 F.Supp.2d 1225, 1236 (W.D. Wis. 2005)).[5]

Second, Plaintiff cites to deposition testimony from an unrelated case[6] to claim (falsely) that Credco has the ability to identify "inaccuracies" within the data received from the NCRAs and to then "reconcile [those] inaccuracies."  Pltf's Opp.

---

[4] Plaintiff asserts in his brief that Credco's witness testified that such mixed files are "common."  Pltf's Opp. at p. 20.  Notably, he does quote any such testimony.  That is because Credco's witness said no such thing during her deposition, as just the opposite is true.  *See generally* Pltf's Opp. at Ex. A.

[5] In the context of such exceptionally low percentages, other courts have granted summary judgment to the defendant in consumer cases.  *See, e.g., Bynum v. Cavalry Portfolio Servs., LLC*, No. 04-CV-0515, 2005 U.S. Dist. LEXIS 48776, at *15-16 (N.D. Okla. Sept. 29, 2005) (granting summary judgment on "*bona fide* error" defense under the Fair Debt Collection Practices Act, which requires the creation of "reasonable" procedures: "Although a precise number eludes the parties, they appear to agree that no more than one percent of the accounts referred to RRVM by Cavalry has been mistakenly sent, *i.e.*, accounts for debtors who had been discharged in bankruptcy.").

[6] Since this testimony is from a different case involving different parties, it is not admissible here and should not be considered.  Fed. R. Civ. P. 32(a)(8) (deposition testimony from other cases is only admissible if it involves the "same parties").

25363619

- 8 -

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

at pp. 3, 20.  Credco in fact has *no product* that can independently determine the accuracy of information received from the NCRAs.  *See* April 6, 2015 Declaration of Mercedes Vela ("Vela 4/6 Decl.") ¶ 2, submitted herewith.[7]

Plaintiff grossly mischaracterizes the testimony and Credco's product offerings.  The deposition testimony cited by Plaintiff addresses a Credco product called "Rapid Recheck."  *See* Pltf's Opp. at p. 3; Ex. B; Ex. E.  Credco's Rapid Recheck product, like the FCRA dispute process which Plaintiff chose not to pursue, ***requires input from the consumer/borrower***.  Vela 4/6 Decl., ¶ 3.  After the delivery of a Credco statement, lenders utilize Rapid Recheck to expedite resolution when a borrower provides them with documentation to show that a certain piece of information is inaccurate (*e.g.*, an account statement reflecting that a loan reported with a balance is actually paid in full).  Vela 4/6 Decl., ¶ 3.  Lenders provide this information to Credco, Credco then sends it to the NCRAs, and the NCRAs then contact the furnishers as necessary to resolve the matter and update the reporting.  Vela 4/6 Decl., ¶ 3.  Credco cannot go through this process on its own – it cannot occur unless and until the consumer/borrower identifies information that he or she believes is inaccurate and also provides documentation of the inaccuracy.[8]  Vela 4/6 Decl., ¶ 3

The fact remains that Credco cannot "rectify inaccuracies," Vela 4/6 Decl., ¶ 2, as claimed by Plaintiff.  Pltf's Opp. at p. 20.  The products mentioned by Plaintiff do not "hold" information from being reported by Credco.  Vela 4/6 Decl., ¶ 2.  As the undisputed facts continue to affirm, Credco has no relationship with the

---

[7] Due to the misrepresentations made in Plaintiff's opposition, which misstate testimony from other cases, Credco submits this brief supplemental declaration of Mercedes Vela to address the arguments made regarding Credco's other products.

[8] The other product referenced in Plaintiff's submissions, Credit Xpert, is wholly inapplicable.  Credit Xpert does not attempt or purport to adjudicate the accuracy of the information within a credit statement.  Vela 4/6 Decl., ¶ 4.  Rather, it is an analytical tool that assists lenders by projecting how changes to a borrower's credit information might impact the credit score.  Vela 4/6 Decl., ¶ 4.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

furnisher, no relationship with the borrower, no insight into the matching decision, and no database such that it could possibly "reconcile" any inaccuracies. *See* Vela Decl., ¶¶ 4-6.

### 3.3 Plaintiff Offers No Suggestion for How Credco Could Possibly, Let Alone Reasonably, "Rectify" the Inaccuracies Alleged Here

Although Plaintiff repeatedly argues that the reasonableness of Credco's procedures should be a fact issue, he offers no suggestion for how Credco could possibly have performed a successful investigation, let alone rectified the alleged inaccuracies. Plaintiff admittedly did not make any attempt to notify Credco or Experian of a dispute. Baker Dep. pp. 108-111. Rather, he claims that Credco should have divined that the handful of student loan accounts that he presently disputes were inaccurate simply because they were reported by only one NCRA. Complaint, ¶¶ 15-16. This is the sole basis for his allegation that Credco failed to follow reasonable procedures. *See id.*

However, Plaintiff fails to explain how Credco was to differentiate the specific tradelines he now disputes from the six other derogatory tradelines reported by only one NCRA, which he does not dispute. The Trans Union Statement includes two civil judgments not reported by Equifax or Experian. Vela Decl., ¶ 6; Def's Exs. F-H. Plaintiff does not dispute that those judgment relate to him. Baker Dep. pp. 108-111. The Experian Statement contains four additional collection accounts that do not appear on the Equifax Statement or the Trans Union Statement, yet Plaintiff does not dispute their accuracy. Vela Decl., ¶ 6; Def's Exs. F-H. Thus, the mere fact that only Experian reported the allegedly inaccurate information cannot give Credco reason to suspect it. Vela Decl., ¶ 6; *see also* Baker Dep., pp. 108-111. How then could Credco have reasonably anticipated a dispute as to only some of the derogatory tradelines reported by less than all three NCRAs based on nothing more than the face of the report? Plaintiff still offers no answer to that question.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

DEFENDANT CORELOGIC CREDCO, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614-2545

1    Indeed, it is rare for the three NCRAs to provide identical reporting.  This,

2 like many, was simply an instance of divergent reporting, which – as the facts

3 establish – happens frequently when the NCRAs report data to Credco, Vela Decl.,

4 ¶ 6, and which Credco's witness testified based on her extensive experience

5 provided Credco with no "reason to believe that some of the information being

6 reported [by Experian here] may be inaccurate."  Pltf's Opp. at Ex. A p. 16.  The

7 fact that the NCRAs often report different information is an obvious reason why

8 lenders often seek reports from all three of the NCRAs – to get a comprehensive

9 view of the applicant's credit history. [9]

10    For there to be a genuine dispute of fact, the fact finder must have sufficient

11 evidence from which it could conclude that Credco's procedures were not

12 reasonable in this instance.  *See, e.g.*, *Anderson v. McIntosh Constr., LLC*, No. 14-

13 5783,  2015 U.S. App. LEXIS 404 (6th Cir. 2015) ("A genuine dispute requires

14 enough evidence for a reasonable jury to find for the nonmoving party.").  No such

15 evidence exists here.  *See, e.g., Benson v. Trans Union, LLC*, 387 F. Supp. 2d 834,

16 843 (N.D. Ill. 2005) (granting summary judgment: "But even if that argument were

17 to be accepted at face value, Benson has not explained what other investigatory

18 measures Trans Union should reasonably have undertaken and, more importantly,

19 what information a more extensive investigation would have revealed.").

20

21 ────────────────────

    [9] This case is nothing like the decision cited by Plaintiff in *Philbin v. Trans*
22 *Union Corp.*, 101 F.3d 957 (3d Cir. 1996), where the same CRA "issued two
    reports that were inconsistent with each other."  *Id.* at 966.  The two other out-of-
23 circuit decisions in *O'Brien* and *O'Connor* cited by Plaintiff in this portion of his
    Opposition are also inapplicable.  *O'Brien v. Equifax Info. Servs., LLC*, 382 F.
24 Supp. 2d 733, 739 (E.D. Pa. 2005) (summary judgment denied because there was a
    fact issue as to whether the defendant even obtained information from the reliable
25 source HSBC); *O'Connor v. Trans Union Corp.*, No. 97-4633, 1999 U.S. Dist.
26 LEXIS 14917, at *12 (E.D. Pa. Sept. 28, 1999) (rejecting an argument not made by
    Credco here that "a plaintiff must show that the defendant had prior notice of the
27 inaccuracies from the consumer").

28

DEFENDANT CORELOGIC CREDCO, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

**4.     PLAINTIFF DOES NOT ADDRESS CREDCO'S REASONED INTERPRETATION OF THE FCRA**

The fact that Credco had no ability to "rectify" the inaccuracies alleged here strongly supports Credco's reasoned interpretation of the FCRA, which Plaintiff largely ignores.  Plaintiff's Opposition devotes considerable time to arguing that the FCRA defines resellers as CRAs, and that resellers are subject to 1681e(b).  Credco does not dispute this.  Therefore, Plaintiff's lengthy discussion of cases addressing whether § 1681e(b) applies to resellers is unnecessary.[10]

**4.1     The FCRA Provides that Resellers Assemble and Merge Credit Data, But Do Not Evaluate that Data**

Credco points out that resellers are CRAs that do not evaluate data, but assemble and merge data received from other CRAs (the NCRAs) without maintaining databases of the information they assemble and merge.  Plaintiff contends that one does not have to "evaluate" in order to be a consumer reporting agency.  But Credco does not suggest otherwise – in fact, resellers are CRAs that do not evaluate.  The term "evaluate" is critical in giving meaning to Congress's decision to define a reseller distinctly from other CRAs.  The FCRA unambiguously provides that an entity that "evaluates" under the FCRA is, by definition, not a reseller.  15 U.S.C. § 1681a(f); 15 U.S.C. § 1681a(u); *see also*

_____

[10] Thus, Plaintiff's reliance on cases addressing whether § 1681e(b) even applies to resellers is misplaced.  *See, e.g., Waterman v. Experian Info. Solutions, Inc.*, No. 12-01400, 2013 U.S. Dist. LEXIS 35455, at *6 (C.D. Cal. Feb. 25, 2013) ("Defendant opines that § 1681e(b) only applies to CRAs that 'prepare' consumer reports, as opposed to those that 'resell' consumer reports . . . ."); *compare Torrance v. CitiFinancial Mortg. Co.*, No. 1:08-CV-403, 2008 U.S. Dist. LEXIS 123415, at *10–11 (S.D. Ohio Dec. 24, 2008) ("[Section 1681e(b)] applies only to entities who meet the definition of a 'consumer reporting agency,' not to 'resellers' of information.").  Moreover, Plaintiff improperly relies upon *Dively v. Trans Union, LLC*, No. 11-3607 2012 U.S. Dist. LEXIS 9314, at *12 (E.D. Pa. Jan. 26, 2012), which involved a motion to dismiss that the court was unwilling to grant without factual information about the reseller's procedures.  *Poore v. Sterling Testing Sys., Inc.*, 410 F. Supp. 2d 557, 568 (E.D. Ky. 2006), is also inapposite, because the court determined that the defendant was not a reseller.

25363619

- 12 -

1   *United States v. Calamaro*, 354 U.S. 351, 359 (1957) (an interpretation that adds to

2   the statute "something which is not there" cannot stand).

3       Plaintiff's theory evidently is that because "assembling" is a feature of both

4   NCRAs and resellers, there is no distinction between the two types of entities.  *See*

5   Pltf's Opp. at pp. 6-9.  Initially, if that were true, then Congress would not have

6   even needed to define resellers, but Congress made a clear distinction.  A reseller's

7   role in "assembling" is why a reseller is considered a CRA.  But, the analysis

8   cannot end there.  Just as Plaintiff emphasizes the disjunctive word "or" in the

9   definition of a CRA, the definition of reseller applies only to an entity that

10  assembles and merges. 15 U.S.C. § 1681a(u).  More importantly, the question

11  remains as to the difference intended by Congress between a NCRA and a reseller.

12  By comparing the two definitions, that difference is plainly "evaluating."

13      Plaintiff then fails to discuss the definition of "evaluate" and ignores the

14  FTC's detailed explanation that evaluating by NCRAs involves judgment over what

15  is included in a consumer report.  *See* Pltf's Opp. at pp. 7-8.  Adopting its common

16  meaning, the FTC made clear that "'[e]valuating' means appraising, assessing,

17  determining or making a judgment on such information."  FTC, *40 Years of*

18  *Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary*

19  *of Interpretations* 29, § 603(f) at 3B.  Congress thus left the decision as to whether

20  a credit item belongs to a specific consumer to the NCRAs, while charging resellers

21  with the role of accurately assembling and merging that information.

22      This statutory framework makes eminent practical sense.  Resellers are not in

23  a position to second guess the judgments made by NCRAs.  Resellers, as defined by

24  the FCRA, do not have these relationships with the many types of furnishers of

25  information or consumers.  Testimony of Timothy J. Muris, Chair, Federal Trade

26  Commission, Before the Senate Banking Committee (July 10, 2003).  Rather, a

27  reseller's only source is the report prepared by each NCRA. 15 U.S.C. § 1681a(u).

28

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine, CA 92614-2545

DEFENDANT CORELOGIC CREDCO, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1    Rather than addressing the settled meaning of evaluate, Plaintiff argues that

2    the term has no import.  Plaintiff relies on *Credit Bureau Servs. v. Experian Info.*

3    *Solutions, Inc.*, and notes that the court referred to NCRAs as "repositories," which

4    Plaintiff characterizes as "a far cry from evaluating anything."  Pltf's Opp. at pp. 7-

5    8.  Yet, Plaintiff takes the quote out of context, overlooking the court's reference to

6    the role of NCRAs to "evaluate the information, and furnish it to end users."  No.

7    12-61360, 2012 U.S. Dist. LEXIS 174487, at *2-3 (S.D. Fla. Dec. 7, 2012).  The

8    CFPB has also stated the obvious—NCRAs must parse furnisher information using

9    their knowledge to assign a tradeline to a specific consumer.[11]

10   Simply stated, the FCRA has established a clear distinction between NCRAs

11   that evaluate (with databases and furnisher sources to decide if a tradeline relates to

12   a consumer), and resellers such as Credco that do not evaluate and play no role in

13   matching, and that also lack any relationships with the furnishers, experience or

14   insight into the matching process, or even a database to determine the issue.  15

15   U.S.C. § 1681a(u).

16   **4.2    There is No Dispute that Credco Properly Assembled and Merged**

17   **the Experian Information**

18   There is no dispute that Credco accurately assembled and merged the

19   information provided to it by Experian.  Thus, Plaintiff's theory of liability hinges

20   on the presumption that § 1681e(b) requires Credco as a reseller to evaluate (*i.e.*,

21   second-guess) Experian's decision to assign a tradeline to the Plaintiff.

22   Specifically, Plaintiff asserts that Credco should have examined the data from

23   Experian, identified any actual inaccuracies, and either "reconcile[d those]

24   inaccuracies" or decided to "hold the sale of the report."  Pltf's Opp. at p. 1.  These

25

26

27    [11] *Key Dimensions and Processes in the U.S. Credit Reporting System*,
Consumer Financial Protection Bureau, December 2012, pp. 21-22, *available at*
28   http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf.

TROUTMAN  SANDERS  LLP
5 PARK PLAZA
SUITE  1400
IRVINE , CA  92614 -2545

25363619
- 14 -

DEFENDANT CORELOGIC CREDCO, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA  92614 -2545

1    identifying, examining, and reconciling activities fall squarely within the definition
2    of "evaluating" and the role of the NCRAs.

3        In addition to the absence of the term "evaluate," Congress further
4    recognized in 15 U.S.C. § 1681i that a reseller is in no position to re-evaluate a
5    NCRA's decision.  Resellers are exempt from most requirements of § 1681i
6    governing disputes, and a reseller's only duty is to first determine whether the item
7    of information is incomplete or inaccurate as a result of an act or omission of the
8    reseller (i.e. an error in the assemble and merge process) and, if not, provide notice
9    and the information supplied by the consumer to the NCRAs; resellers perform no
10   investigation of information reported by NCRAs.  15 U.S.C. § 1681i(f)(2)(B)(ii).

11       Here, there is no dispute that the alleged errors relating to Plaintiff originated
12   with Experian, and therefore are not the result of an act or omission of Credco.
13   Complaint, ¶ 14.  If Plaintiff had disputed the information with Credco (which he
14   admittedly did not), Credco's *only* obligation, after determining that no inaccuracy
15   resulted from its assembly and merge process, would have been to notify Experian
16   of the dispute.  15 U.S.C. § 1681i(f)(2)(B)(ii).  In choosing this framework,
17   Congress recognized that resellers are in no position to question or judge the
18   accuracy of the NCRAs' decisions.  Plaintiff's opposition fails to explain why
19   Credco as a reseller should be required to take action under § 1681e(b) that is not
20   required by § 1681i even after a proposed inaccuracy is identified via a dispute.
21   Just as a NCRA is not responsible for resolving a dispute between a furnisher and a
22   consumer (*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir.
23   2010)), neither is a reseller positioned to determine the validity of a decision made
24   by a NCRA.

25       **4.3**    **The Policy Goal of Accuracy is Advanced by Recognizing the**
26                **Limited Role and Duties of the Reseller**

27       Credco does not dispute that the FCRA places value on accuracy.  To the
28   contrary, Credco argues that the goal of maximum possible accuracy is best served

when a reseller accurately assembles and merges the information it receives from the most reliable sources available to it – the NCRAs.  The NCRAs are charged to fulfill the role of evaluating and are held accountable under the FCRA if they fall short.

To ask Credco to substitute its judgment for the NCRAs and lenders without relationships with either the consumer or the furnisher will not promote accuracy.  This case illustrates the point.  The three May 2014 Statements list fifteen derogatory tradelines reported by only one NCRA.  Vela Decl., ¶ 6; Def's Exs. F-H.  If Credco had removed all fifteen of these tradelines simply because they were being reported by only one NCRA, the resulting credit statements would certainly have been inaccurate because they would have omitted two undisputed civil judgments and four undisputed collection accounts.  *See, e.g.*, *Mortimer v. Bank of Am., N.A.*, No. C-12-01959, 2013 U.S. Dist. LEXIS 2993, at *21 (N.D. Cal. Jan. 3, 2013) (reporting of accurate but unfavorable information on the consumer cannot give rise to FCRA liability).  Indeed, given Credco's extremely low dispute volume, if Credco's procedure was to remove all information not reported by all three NCRAs, its credit statements would be far less accurate.  Similarly, asking resellers to "hold" credit statements anytime the NCRAs do not report identical information would unnecessarily delay the credit process in a majority of instances.

### 4.4   Plaintiff Relies on Legal Authority Involving Inapplicable Legal Arguments and Limited Factual Information

Plaintiff further argues that this case presents the same issues addressed in certain other cases.  Pltf's Opp. at p. 5.  That is incorrect.  In *Perez v. Trans Union, LLC*, the court considered only whether a reseller's procedures must be held reasonable as a matter of law without any record evidence as to what procedures were actually employed.  526 F. Supp. 2d 504, 509 (E.D. Pa. 2007).  In *Starkey* and *Dirosa,* the same judge considered whether the definition of "accurate" under the FCRA was different as applied to resellers versus as applied to other CRAs.  *Dirosa*

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

*v. Equifax Info. Servs. LLC*, No. 13-131, 2014 U.S. Dist. LEXIS 108379, at * (C.D. Cal. Jan. 21, 2014) ("Defendant moves for summary judgment as to Plaintiff's claim for violation of the FCRA on the basis that . . . its report was accurate . . . ."); *Starkey v. Experian Info. Solutions, Inc.*, 32 F. Supp. 3d 1105, 1108 (C.D. Cal. 2014) (same).

None of those cases addressed the argument Credco advanced here regarding the definitional and practical constraints on resellers, against a record that contains evidence of Credco's procedures for assembling and merging data . *See Starkey*, 32 F. Supp. 3d at 1111 ("Defendant has explicitly declined to argue at the summary judgment stage that it employed reasonable procedures to assure the maximum possible accuracy of its report on Plaintiff."). Nor did any of those cases consider the reasonableness of Credco's reliance on the NCRAs. Nor did they consider the many arguments regarding willfulness advanced by Credco here. Therefore, the authority cited by Plaintiff is facially inapposite with respect to the record for summary judgment in his case. *See, e.g., Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 550 (C.D. Cal. 2012) ("In sum, because the defendants in *Mazza* and Defendants in the present case presented different arguments to their respective courts, *Mazza* is distinguishable from the present case.").

**5.    PLAINTIFF OFFERS NO EVIDENCE TO SHOW THAT CREDCO'S RELIANCE ON THE NCRAS WAS UNREASONABLE**

Plaintiff also contends that notice of an inaccuracy is not required to establish a claim under § 1681e(b), *see* Pltf's Opp. at pp. 12-16, but again, he is addressing arguments not made here. Credco agrees that the FCRA does not expressly require a consumer to provide notice that he/she disputes a particular tradeline before filing suit alleging a violation of 1681e(b). Plaintiff provided no such notice here.

Credco's argument is that, when there is no notice of a dispute, a reseller employs reasonable procedures to assure maximum possible accuracy when it relies upon the only and most reliable sources available to it – the NCRAs. Not only are

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

the NCRAs the most reliable source available to Credco, the information they provide is in fact highly reliable.  Vela Decl., ¶ 4.  See also Michael Staten, *Where Credit Report Reforms Fall Short*, American Banker (Mar. 24, 2015) (noting that "the rate of serious errors in credit reports is already relatively low" based upon the FTC's finding that only 5.5% of consumers had errors).  Neither the FTC nor the CFPB have ordered any of the NCRAs to stop producing reports.  Credco had no notice of any dispute from Plaintiff or Experian (or anyone else) prior to transmitting the Statements in May 2014.  Vela Decl., ¶ 8.  Thus, under extensive judicial and regulatory authority, Credco reasonably relied upon its sources.  Plaintiff failed to point to any specific evidence in its opposition brief to indicate that the NCRAs were not a reliable source, as was his burden.  Instead, Plaintiff tries to distinguish the cases cited by Credco on the narrow point that they did not involve a "mixed" file inaccuracy.[12]  Pltf's Opp. at p. 14 n.3.  Plaintiff's effort to distinguish these cases is misplaced, as the key in each of these cases was not the nature of the supposed inaccuracy; rather, the defendant in each case was permitted as a matter of law to reasonably rely on an apparently reliable source to perform its role.  *Serfess v. Equifax Credit Information Svcs.*, 2014 U.S. Dist. LEXIS 120138, *18 (D.N.J. 2014) ("[T]he Court also finds that reliance upon [an apparently reliable source] is reasonable."); *Sarver*, 390 F.3d at 972; *Henson*, 29 F.3d, 280, 285 (7th Cir. 1994) ("[Defendants] argue that they followed 'reasonable procedures' by obtaining the information from . . . a presumptively reliable source.  We agree."); *Schmitt v. Chase Manhattan Bank, N.A.*, No. 03-3295, 2005 U.S. Dist. LEXIS 18029 (D. Minn. 2005) (same); *see also* 16 C.F.R. pt. 607(3)(D) (Section

---

[12] Plaintiff's affirmative reliance on *Dively v. Trans Union, LLC* is also misplaced.  *See* Pltf's Opp. at p. 15.  The *Dively* court did not address any facts relating to whether NCRAs were reliable sources because of the early, pre-discovery procedural posture of the case at the motion to dismiss stage.  2012 U.S. Dist. LEXIS 9314 at *12.  The same is true in *Valentine v. First Advantage SafeRent, Inc.*, No. 08-142, 2008 U.S. Dist. LEXIS 80764, at *5 (C.D. Cal. Sept. 23, 2008), where the court simply granted the plaintiff leave to amend the complaint.

1681e(b) does "not hold a consumer reporting agency responsible where an item of information that it receives from a source that it reasonably believes to be reputable appears credible on its face, and is transcribed, stored and communicated as provided by that source"). The decision in *Anderson v. TransUnion* further underscores the applicability of this principle to a reseller relying on NCRAs, which have "built-in incentives to be accurate in their reporting." 345 F. Supp. 2d 963, 972 (W.D. Wisc. 2004).

   In making his counterargument, Plaintiff also omitted the most recent decision on the issue, which came from this Court. In *Grigoryan v. Experian Information Solutions, Inc.*, the court held that the principles cited by Credco in its brief are not dependent on the type of inaccuracy, but whether Plaintiff "has adduced any evidence that [the sources] are not reputable sources or that any of the alleged inaccurate reporting resulted from defendants' failure to maintain and operate their internal databases in a reasonable manner."[13] 2014 U.S. Dist. LEXIS 181916, at * 64-65. The court then granted summary judgment because the plaintiff had offered "no evidence" to counter the evidence of reputability and reliability of the furnisher that had been advanced by the defendant. *Id.*

   Like in *Grigoryan*, Plaintiff has presented no evidence of the unreliability of the NCRAs, failing to even take any discovery from Experian on this issue during the discovery period. In sharp contrast, Credco has offered evidence as to its procedures and as to the very low volume of disputes it receives. Vela Decl., ¶¶ 4-9. It is undisputed that Credco was unaware that Plaintiff alleged the Experian Statement contained inaccurate information until this lawsuit was filed. Nor did

---

[13] Plaintiff also claims that Credco is arguing that a furnisher is "authorized to report inaccurate information without consequences," and that a reseller is able to do likewise. Pltf's Opp. at p. 12 n.2. Credco did not make that argument. To the contrary, Credco made the point that NCRAs have an even greater incentive to be a reliable source when compared to the furnishers at issue in the cited cases.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614 -2545

Experian, despite its eight prior instances of credit reporting for Plaintiff over the past two years.  Nor did any of the relevant furnishers of information.

## 6. PLAINTIFF HAS PUT FORTH NO PROBATIVE EVIDENCE OF A WILLFUL VIOLATION OF THE FCRA

As set forth above, Credco is not liable to Plaintiff.  These same facts and arguments refute any attempt to claim that Credco "willfully" violated the FCRA.

As a threshold matter, Plaintiff claims that Credco cannot make an argument as to a lack of any willful violation because the text of § 1681e(b) is "pellucid[ly]" clear as to Credco's legal obligations.  Pltf's Opp. at pp. 23-24; *see also Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007) (establishing that the FCRA provision must be "pellucid" in its meaning for the purpose of establishing willfulness based on the text alone).  The arguments made by Credco refute that claim.  That Plaintiff's reading of the statute is erroneous – whereby Credco would be required to "evaluate" consumer information – is also confirmed by § 1681i, which provides that a reseller need only pass along a notice of a dispute to the NCRAs in order to comply with the FCRA.  If a reseller is not responsible for investigating a NCRA's judgment on whether an account relates to the consumer under § 1681i even after being contacted by the borrower, then it is illogical to argue (as Plaintiff does here) that a reseller is required to do so under § 1681e(b) without ever being contacted by the borrower, lest the reseller face punitive damages.

In fact, and neatly disposing of Plaintiff's argument, even one of the principal cases <u>cited by Plaintiff</u>, *see* Pltf's Opp. at p. 5, held as follows in dismissing a claim of a willful violation by Credco under § 1681e(b):

> Credco did not violate any known right of Plaintiff.  The reasonable action to take under the circumstances is not statutorily plain, or is at least debatable.  No judicial authority has ruled what credit reporting agencies like Credco [resellers] must do under the circumstances. Credco had no known duty, given the nature of Popular Ford's request of it, to correct the inaccuracy of credit bureau reports.

*Perez*, 526 F. Supp. 2d at 510.  Plaintiff's argument in this regard is without merit.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

A willful violation also cannot be found here as a matter of law for numerous other reasons.  First, in contrast to the evidence offered by Credco as to the reasonableness of its procedures – both generally and with respect to the undisputed facts of this case – Plaintiff has put forth no probative evidence of any willful violation under the FCRA.  Rather, Plaintiff can only muster two "facts" in support of that claim.  First, Plaintiff notes that Credco's witness testified that Credco's procedures are not perfect in screening out certain potential inaccuracies (of which it has no underlying knowledge) in a tiny percentage of the millions of reports that Credco processes.  Pltf's Opp. at p. 20.  That is not the proper standard for liability under the FCRA, let alone willful liability.  *See, e.g.*, *Cosmas*, 757 F. Supp. 2d at 498.  Second, Plaintiff asserts that there are products whereby Credco supposedly can "instantaneously identif[y] inaccuracies."  Pltf's Opp. at p. 20.  As explained above, the irrelevant products in question do not have such capabilities.

As there is a total lack of probative evidence of any willful violation, Credco is entitled to summary judgment on that claim.  *See, e.g.*, *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 241 (4th Cir. 2009) ("[E]vidence that Equifax acted willfully is wholly lacking.  Accordingly, Robinson's argument is without merit."); *Toliver v. Experian Info. Solutions, Inc.*, 973 F. Supp. 2d 707, 732 (S.D. Tex. 2013) ("Toliver has produced no evidence that Experian acted willfully.  Thus, Experian is entitled to summary judgment on all of Toliver's claims under § 1681n for willful violations of the FCRA."); *accord Eller v. Experian Info. Solutions, Inc.*, No. 09-cv-40, 2011 U.S. Dist. LEXIS 85858, at *71 (D. Colo. May 17, 2011).

Additionally, Plaintiff has not identified any Ninth Circuit or FTC authority that refutes Credco's legal position in this case.  And, although all of the reseller cases cited by Plaintiff are readily distinguishable, each case identified with respect to the activities of resellers is a *district court* decision.  *See, e.g.*, *Safeco*, 551 U.S. at 70 (finding a lack of any willful violation because this was "not a case in which the business subject to the Act had the benefit of guidance from the courts of appeals or

Troutman Sanders LLP
5 Park Plaza
Suite 1400
Irvine , CA  92614 -2545

25363619

- 21 -

the Federal Trade Commission that might have warned it away from the view it took.  Before these cases, no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the FTC."); *Long v. Tommy Hilfiger U.S.A.*, 671 F.3d 371, 377 (3d Cir. 2012) (dismissing claim of a willful violation: "Although Long argues that there was district court authority putting Hilfiger on notice that its interpretation was incorrect, there was no guidance from the federal courts of appeal on this issue.").  In contrast, every Court of Appeals decision cited by Plaintiff addressed only a NCRA's (*i.e.*, a non-reseller) compliance with § 1681e(b).  *See* Pltf's Opp. at p. 24.

Finally, Credco's position is supported by a number of factually-analogous decisions, which were detailed at length in its opening brief.  *See, e.g.*, *Anderson*, 345 F. Supp. 2d at 972; *Taylor v. CoreLogic SafeRent, LLC*, 1:13cv3435, Dkt. No. 50 p. 27 (N.D. Ga. Oct. 23, 2014).[14]  These cases affirm that no finding of a willful violation is possible here.  *See, e.g.*, *Horsch v. Wells Fargo Home Mortg.*, No. 14-2638, 2015 U.S. Dist. LEXIS 37476, at *31 (E.D. Pa. Mar. 24, 2015) (although district court authority cannot give rise to a willful violation, the fact that "several district courts" supported the defendant's position precluded a finding of willfulness).  The claim for a willful violation of the FCRA must be dismissed.

## 7.   CONCLUSION

For the foregoing reasons, the Court should grant summary judgment and dismiss this action with prejudice.

---

[14] Plaintiff attempts to distinguish *Taylor* by pointing to a decision in *Smith v. E-Backgroundchecks.com*, which held that "a disclaimer does not negate liability." Pltf's Opp. at p. 22.  Credco made no such argument as to liability.  Rather, as the *Taylor* court held, a disclaimer and the complete transparency of a defendant's processes prevented any showing of a *willful* violation.  Plaintiff also asserts that the *Smith* decision held that *Taylor* used the wrong legal standard in assessing willfulness.  Pltf's Opp. at p. 22.  The court in *Smith* made no such finding.  To the contrary, the court in *Taylor* correctly applied the standard of *Safeco* in reaching its decision on the willfulness issue.  *See Taylor*, 1:13cv3435, Dkt. No. 50 p. 23.

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE , CA 92614 -2545

DEFENDANT CORELOGIC CREDCO, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

1   Dated: April 6, 2015                    TROUTMAN SANDERS LLP

2

3                                           By: /s/ Thomas H. Prouty
                                                 Thomas H. Prouty

4                                           *Attorneys for Defendant*
                                            *CoreLogic Credco, LLC*
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TROUTMAN SANDERS LLP
5 PARK PLAZA
SUITE 1400
IRVINE, CA 92614-2545

25363619

DEFENDANT CORELOGIC CREDCO, LLC'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT